**ORIGINAL**

Terrence A. Oved, Esq. (TAO0418)
Darren Oved, Esq. (DO9337)
OVED & OVED LLP
*Attorneys for Plaintiff*
110 Greene Street, Suite 1102
New York, NY 10012
Tel: 212.226.2376

**CV 04-747**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 24 2004 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------

THE JEWISH SEPHARDIC YELLOW PAGES, LTD.,
D/B/A KOSHER YELLOW PAGES,

DEARIE, J

**VERIFIED COMPLAINT**

*Plaintiff,*

- against -

CIVIL ACTION N°: CV 04-_____

DAG MEDIA, INC. and ASSAF RAN,

MANN, M.J.

*Defendants.*
--------------------------------------------------------------------

Plaintiff, THE JEWISH SEPHARDIC YELLOW PAGES, LTD., D/B/A KOSHER

YELLOW PAGES, by its attorneys Oved & Oved LLP, complaining of the Defendants,

alleges as follows:

## JURISDICTION AND VENUE

1.      This claim arises under the provisions of the Lanham Act, 15 U.S.C.

§1125(a)(1)(A), *et seq.* (the "Act"). This Court has jurisdiction of this action pursuant to

28 U.S.C. §§1331, 1338(a), 1367(a) as well as pursuant to 15 U.S.C. §1121.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and

1400(a) since Defendants are subject to personal jurisdiction in this judicial district.

## THE PARTIES

3.      Plaintiff, THE JEWISH SEPHARDIC YELLOW PAGES, LTD ("JSYP"),

D/B/A KOSHER YELLOW PAGES is a domestic corporation duly organized and

1

existing by and under the laws of the State of New York on June 12, 1997, and having an address of 2150 East 4th Street, Brooklyn, NY 11223.

4. At all times herein mentioned, Plaintiff has been and still is doing business under the mark and trade name of KOSHER YELLOW PAGES at the business address listed above. Plaintiff has been conducting business since 1999 and filed an assumed name certificate with the New York State Department of Corporations on July 18, 2001 in order to lawfully transact business under the name "Kosher Yellow Pages". Copies of corporate filings evidencing the foregoing are attached as **Exhibit A** to the Declaration of Plaintiff's President, David Ben Hooren, in support of Plaintiff's Motion for a temporary restraining order and preliminary injunction (the "Ben Hooren Declaration").

5. Defendant, DAG Media, Inc., is a domestic public corporation duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business at 125-10 Queens Blvd., Suite 14, Kew Gardens, New York 11415. It trades on the NASDAQ Small Cap Market under the symbol DAGM.

6. Defendant, Assaf Ran, is the President and Chief Executive Officer of the Defendant corporation and has his principal place of employment at 125-10 Queens Blvd., Suite 14, Kew Gardens, New York 11415.

## FACTUAL BACKGROUND

7. Plaintiff's business consists of the publication and distribution of yellow page telephone directories in print and on the World Wide Web to targeted niche markets of the Jewish communities in New York, New Jersey and Florida.

2

8.    Plaintiff's principal source of revenue is derived from the sale of advertisements in its print directories the "Kosher Yellow Pages", the "Sephardic Yellow Pages" as well as the sale of advertisements in its corresponding on-line internet directories, www.kosheryellowpages.com and www.kosheryellow.com.

9.    In the summer of 1997, Plaintiff's President, David Ben-Hooren ("Ben-Hooren") formed JSYP and started the publication of a phonebook style directory containing listings and advertisements for businesses seeking to market their products and services to the Jewish Community. The first such telephone directory was published in the winter of 1997-1998 and was titled *The Sephardic Yellow Pages*. Copies of the cover page and identification page for Plaintiff's 1997-1998 edition of *The Sephardic Yellow Pages* are annexed as **Exhibit B** to the Ben Hooren Declaration.

10.    Subsequently, JSYP published four (4) more editions of *The Sephardic Yellow Pages* that were distributed in 1998, 1999-2000, 2001 and 2003. Copies of the cover and identification pages of the 1998, 1999-2000, 2001 and 2003 editions of Plaintiff's *Sephardic Yellow Pages* are annexed as **Exhibit C** to the Ben Hooren Declaration.

11.    For the 2000-2001 edition however, JSYP wanted to expand the breadth of its target audience to service the greater Jewish community at large and not just the Sephardic Jewish community, which is limited to a particular sector of the Jewish community, and accordingly published an additional publication entitled *The Kosher Yellow Pages*. Copies of the cover and identification pages of Plaintiff's 2000-2001, 2001-2002 and 2003 editions of *The Kosher Yellow Pages* telephone directory are annexed as **Exhibit D** to the Ben Hooren Declaration.

12.   Additionally, while JSYP did not actually begin publishing a separate telephone directory known as The Kosher Yellow Pages until 2000, it has often referred to its publication as The Kosher Yellow Pages for many years prior to that. Copies of Plaintiff's advertisements in the Kosherfest 1998 Official Directory and Strictly Business (Summer 1999) publications as well as marketing flyers dated August 29, 1998, July 12, 1999 and August 5, 2000 and other promotional materials evidencing Plaintiff's use of the "Kosher Yellow Pages" mark to identify its directories are respectively annexed as **Exhibit E** to the Ben Hooren Declaration.

13.   Even as far back as five (5) years ago, on February 16, 1999, Plaintiff filed a trademark application for the "Kosher Yellow Pages" mark which was denied on the grounds of descriptiveness.   A copy of this application together with the examining attorney's refusal to register the mark is annexed as **Exhibit F** to the Ben Hooren Declaration.

14.   In addition to the foregoing, Plaintiff also owns and operates several internet portals, namely www.kosheryellowpages.com, which it has owned and operated since January 9, 1999 as well as www.kosheryellow.com which primarily target the aforementioned Jewish communities. Copies of the domain name registrations evidencing the foregoing are annexed as **Exhibit G** to the Ben Hooren Declaration.

15.   As part of the added value and service Plaintiff provides to the users and advertisers in its Kosher Yellow Pages telephone directory, Plaintiff offers a Kosher Discount Card program. Under this program, Plaintiff has persuaded many of its advertisers to agree to give discounts of up to 10% off to customers who present the Kosher Discount Card.   The Kosher Discount Card is distributed with Plaintiff's

4

telephone directories and can also be ordered directly from Plaintiff. Copies of Plaintiff's Kosher Discount Card are annexed as **Exhibit H** to the Ben Hooren Declaration.

16.     As an additional part of its value added services, Plaintiff also offers a Kosher Referral Service to its users and advertisers whereby potential consumers who are in the market for a specific good or service can call the Plaintiff's Kosher Referral Service's toll free hotline number, **1-877 W-H-Y K-O-S-H-E-R,** to be directed to one or more advertisers in the Plaintiff's Kosher Yellow Pages directory which can meet those customers' specific needs. The 1-877 WHY-KOSHER toll free number of the Plaintiff's Kosher Referral Service is published throughout the Plaintiff's Kosher Yellow Pages telephone directory as well as distributed to, and advertised in, many highly trafficked locations throughout the Jewish communities that Plaintiff services. A copy of a door sticker advertising Plaintiff's 1-877-WHY-KOSHER hotline as well as its Kosher Yellow Pages telephone directory is annexed as **Exhibit I** to the Ben Hooren Declaration.

17.     Defendants are in the exact same business as the Plaintiff in that they also produce and distribute telephone directories targeted at the Jewish community. Some of Defendants telephone directories are named "Dapey Assaf" and "The Jewish Master Guide". More recently however, commencing with a 2003 edition, Defendants have published a telephone directory bearing the exact same title as Plaintiff's "Kosher Yellow Pages" mark. Defendants have also published a 2004 edition telephone directory also bearing the Plaintiff's "Kosher Yellow Pages" mark to identify it. Copies of the cover page and identification page of Defendant's infringing 2003 and 2004 Kosher Yellow Pages publications are annexed as **Exhibit J** to the Ben Hooren Declaration. It should be noted that while Defendant's 2003 Edition of the "Kosher Yellow Pages" bears the

"Kosher Yellow Pages" mark on its front cover, the identification page inside clearly states that it is in fact the "Jewish Master Guide 2003" and not the "Kosher Yellow Pages".

18.    The name selected by the Defendants for their competing telephone directory and the adoption and use by the Defendants of the Plaintiff's identical mark and trade name "Kosher Yellow Pages" on their competing telephone directory, has misled and will continue to mislead the public, which has identified and will continue to identify the business of the Defendants as the activities of the Plaintiff and more particularly will mislead, confuse and deceive those patrons of the Plaintiff who are or intend to become customers of Plaintiff's, all of which constitute an unfair and unlawful competition against Plaintiff. Copies of Fourteen (14) sworn affidavits evidencing such actual confusion in the marketplace are collectively annexed as **Exhibit K** to the Ben Hooren Declaration.

19.    At the time of Defendants unlawful publication of their directory bearing the exact same name as Plaintiff's "Kosher Yellow Pages" mark and trade name on the exact same goods as Plaintiff's, Defendants knew that Plaintiff had theretofore, and was then continuing in and, conducting the business hereinbefore mentioned under "Kosher Yellow Pages" trade name and mark and that said trade name and mark was known to the public as the Plaintiff's in connection with and to identify the business name Plaintiff presently uses for its corporation and its telephone directory publication.

20.    To date, large numbers of the general public (including users, advertisers, suppliers, vendors, printers as well as others affiliated and involved in the yellow page directory listing and printing industry) have been confused and deceived by Defendants

6

said wrongful conduct. As a result of Defendants wrongful acts, the public has been confused and deceived into believing that Defendants infringing telephone directory bearing the exact same name as Plaintiff's "Kosher Yellow Pages" mark and trade name, is a part of or authorized by Plaintiff and that the services to be rendered to such public would be of a superior quality in conformity with Plaintiff's "Kosher Yellow Pages" directory's reputation and good will.   Consequently, many of Plaintiff's clients and advertisers have canceled their advertising commitments with Plaintiff as well as refused to pay Plaintiff for advertisements already run because of the confusion with Defendant's infringing directories.  Plaintiff's harm is all too real and threatens the continued viability of its existence as a business.

21.    Defendants directories also attempt to market to and capitalize on the same exact Jewish target audience as Plaintiff's Kosher Yellow Pages telephone directory.

22.    Plaintiff's Kosher Yellow Pages directory is, has been, and continues to be a very well known and extensive telephone directory in the Jewish communities it services with loyal and dedicated advertisers, customers and users.

23.    The services offered and sold by Plaintiff under its Kosher Yellow Pages telephone directory are, have been and continue to be well and favorably known throughout the areas Plaintiff services and Plaintiff has expended and continues to expend many tens of thousands of dollars every year in advertising, marketing, solicitations and such other forms of promotion to develop the substantial good will and reputation it presently enjoys.  Copies of publications and correspondences demonstrating investment

7

in, and recognition of, Plaintiff's Kosher Yellow Pages mark and trade name, are collectively annexed as **Exhibit L** to the Ben Hooren Declaration.

24.     Plaintiff's Kosher Yellow Pages telephone directory has consistently been among the top rated niche directories in the Jewish communities it services in volume circulation for several years.

25.     Plaintiff's Kosher Yellow Pages directory has, because of its sterling reputation and success, been selected as the print medium of choice for such distinguished top tier advertisers as Sovereign Mercedes and Simpson Jewelers. Copies of the foregoing advertisements are annexed as **Exhibit M** to the Ben Hooren Declaration.

26.     In addition, among the other steady, loyal and long-term corporate advertisers who have deemed Plaintiff's Kosher Yellow Pages publication worthy of their advertisements are nationally distinguished and renowned firms such as Cartier, Rolls-Royce, Columbia Presbyterian Hospital and the DeBeers Diamond Company. Copies of the foregoing advertisements are annexed as **Exhibit N** to the Ben Hooren Declaration.

27.     Based upon the Plaintiff's Kosher Yellow Pages telephone directory's extraordinary name recognition, reputation, service and sales, Lifestyle Magazine published an extensive article about the Plaintiff and its Kosher Yellow Pages directory. A copy of this Lifestyle Magazine Article is annexed as **Exhibit O** to the Ben Hooren Declaration.

28.     On February 16, 1999, Plaintiff filed a trademark application with the United States Patent and Trademark Office in Washington D.C. (the "PTO") for

8

registration of its mark "Kosher Yellow Pages" on the Principal Register for use with Telephone Directories in International Class 16. A copy of a Document Display Page taken from the U.S. Patent and Trademark Office's Web Page evidencing the foregoing filing date of February 16, 1999 is annexed as **Exhibit P** to the Ben Hooren Declaration.

29.    Subsequent to this filing, the PTO examining attorney denied Plaintiff registration of the mark finding that the mark was merely descriptive. Rather than apply for registration on the Supplemental Register, which is itself an acknowledgement of a mark's descriptiveness, Plaintiff opted instead to abandon its pursuit of registering the mark at such time and instead to reapply for registration of the mark at such time as it could demonstrate that its "Kosher Yellow Pages" mark had acquired a secondary meaning, entitling it to registration of the mark on the Principal Register.

30.    Accordingly, since 1999 to the present date, Plaintiff has expended hundreds of thousands of dollars in the printing, promotion, marketing, distribution, advertising and sale of its "Kosher Yellow Pages" trade name, website and mark and has, since 2000, distributed tens of thousands of its "Kosher Yellow Pages" telephone directories to the Jewish communities it services.   Accordingly, Plaintiff's use of the "Kosher Yellow Pages" mark to identify its telephone directories has now acquired a secondary meaning sufficient to overcome any claim of descriptiveness so that Plaintiff is at present entitled to registration of its "Kosher Yellow Pages" mark on the Principal Register.

31.    Building on Plaintiff's excellent reputation and goodwill, Plaintiff began to further develop, market and ultimately produce its first Kosher Yellow Pages telephone directory. At the time that Plaintiff published its first Kosher Yellow Pages

9

telephone directory in 2000, Defendants have never used the "Kosher Yellow Pages" name at all.

32.    Interestingly    enough,    while    Plaintiff    has    owned    the www.kosheryellowpages.com domain name for over five (5) years since January 9, 1999, the Defendants have only recently acquired the www.kosheryellowpages.net domain name on February 12, 2004.  Copies of documents retrieved from REGISTER.com confirming the foregoing are annexed as **Exhibit Q** to the Ben Hooren Declaration.

33.    In addition, a simple search on the YAHOO search engine's yellow pages for "Kosher Yellow Pages" returns only one result and that being Plaintiff.  A copy of the Yahoo search result page retrieved on November 6, 2003 is annexed as **Exhibit R** to the Ben Hooren Declaration.

34.    Moreover, even as recent as February or March of 2002, the date immediately prior to the corporate Defendant's mandatory filing of its 2001 Annual Report with the United States Securities and Exchange Commission (the "SEC") as well as the distribution of the Annual Report to its shareholders, there is absolutely no mention whatsoever of any "Kosher Yellow Pages" telephone directory publication by the corporate Defendant. Neither is there any reference whatsoever on the back cover of this Annual Report which instead prominently displays only the corporate Defendant's three telephone directory publications "The Jewish Israeli Yellow Pages", Manhattan Yellow Pages" and "The Jewish Master Guide".

35.    Clearly, as recent as March of 2002, the corporate Defendant had not been using the "Kosher Yellow Pages" name and mark to identify any of its publications otherwise, as required by the "full disclosure" requirements of the relevant Securities Act,

10

this disclosure would have had to have been made in the corporate Defendant's 2001 Annual Report, where it clearly was not.   A copy of the front and back cover of the corporate Defendant's 2001 Annual Report, including the greeting page as well as pages 2 and 3 thereof describing its products and services, are annexed as **Exhibit S** to the Ben Hooren Declaration.

36.   In addition, the reference to any "Kosher Yellow Pages" telephone directory publication being used by the corporate Defendant is also glaringly absent from its 2002 Annual Report to its shareholders a year later that was similarly filed with the SEC.   In fact, other than a photograph on the back cover of this 2002 Annual Report purporting to show, for the first time, a photograph of a telephone directory conveniently entitled "Kosher Yellow Pages", there is absolutely no corresponding mention or description of this product, or any other product called "The Kosher Yellow Pages" in the products and services section of its 2002 Annual Report where, pursuant to its full disclosure obligations under the Securities Act, such disclosure is mandatory.   A copy of the front and back cover of corporate Defendant's 2002 Annual Report, including the greeting page as well as pages 2, 3 and 4 thereof describing its products and services are annexed as **Exhibit T** to the Ben Hooren Declaration.

37.   Since the first publication of the first Kosher Yellow Pages telephone directory in 2000, Plaintiff's Kosher Yellow Pages telephone directory has achieved a great deal of success and name recognition.

38.   Starting with Plaintiff's first edition of the Kosher Yellow Pages directory produced in 2000, Plaintiff received numerous letters commending it on its work from various New York State and City leaders and officials such as former Mayor Rudolph

Guiliani, Jules Polonetsky, Commissioner of the New York City Department of Consumer Affairs, Ambassador Shmuel Sisso, Consul General of Israel in New York City and Dov Hikind, Assemblyman for the 48th District for the Assembly of the State of New York. Copies of the foregoing letters are annexed as **Exhibit U** to the Ben Hooren Declaration.

39. Even up to this day, Plaintiff's Kosher Yellow Pages telephone directory continues to receive support and adulation from the political and business leaders of both New York City and New York State. In fact, in Plaintiff's most recent sixth (6th) edition of its Kosher Yellow Pages telephone directory, there are also letters of support from such notable leaders as Governor George Pataki, Mayor Michael Bloomberg, Gretchen Dykstra Commissioner of the New York City Department of Consumer Affairs, and Betsy Gotbaum, Public Advocate from the Office of the Public Advocate for New York City. Copies of the foregoing letters are annexed as **Exhibit V** to the Ben Hooren Declaration.

40. Plaintiff's Kosher Yellow Pages telephone directory receives a great deal of success and name recognition due to the fact that Plaintiff only publishes the highest quality directory and only accepts advertisers that are honest, reputable and whose businesses, products, and services are consistent with traditional Jewish values.

41. In sharp contrast, Defendants telephone directories are not accorded the same high regard in the Jewish community as are Plaintiff's telephone directories due in part to the graphic and sexual nature of the advertisements that Defendants have accepted and permitted to be printed in its publications. Such "adult" themed sexually explicit services such as male and female escort services depicting scantily and semi nude men

and women in suggestive sexual positions as well as various "In Call" services with names such as "The Pleasure Chest", "Hunk Mania", "Baby Play Mates", "A Taste of Honey Topless Entertainment" and "Wings of Desire Escorts – Non Stop Flights To Heaven" are extremely offensive to traditional Jewish values and as such are actively banned from the homes of many traditional Jewish families who utilize these telephone directories as a family resources which their children often consult and utilize. Copies of nearly thirty (30) advertisements from such sexually suggestive and graphic establishments taken from the Defendants 2001 edition of its "Jewish Israeli Yellow Pages" are annexed as **Exhibit W** to the Ben Hooren Declaration.

42.     Plaintiff's "Kosher Yellow Pages" publication in marked contrast to Defendants publication, has NEVER accepted for publication any sexually suggestive or explicit advertisement from any such services and establishments, choosing instead to forego the short term financial benefit from these advertisers and focusing instead on the quality of its "Kosher Yellow Pages" telephone directory and its ultimate use by the traditional Jewish families who rely on it as a resource.

43.     By reason of the matters set forth herein, Plaintiff, and its trade name and mark, "Kosher Yellow Pages" have become well and favorably known to the trade and the public and said name and mark has become the means by which Plaintiff and its services are identified and said name and mark has come to symbolize a valuable good will which Plaintiff enjoys.

44.     Since 1999, Plaintiff has been actively conducting business under the mark and trade name "Kosher Yellow Pages", including, but not limited to, the open display, use, and publication of the Plaintiff's Kosher Yellow Pages mark and trade name

13

in and on Plaintiff's business signs, stationery, advertising, literature, and employee uniforms in connection with the sale of advertisements and publication of its telephone directory listings to the general public.

45.    In addition, on September 30, 2002, over three and one-half (3 ½) years following Plaintiff's filing its trademark application with the PTO for registration of its "Kosher Yellow Pages" mark for use with telephone directories, the corporate Defendant filed an application with the PTO attempting to register the "Kosher Yellow Pages" mark as its own on the Principal Register (the "Fraudulent Trademark Application"). A copy of this Fraudulent Trademark Application, the specimens submitted by the corporate Defendant in support thereof, the PTO examining attorney's refusal to register the mark on the grounds of descriptiveness and a copy of a Document Display Page taken from the U.S. Patent and Trademark Office's Web Page evidencing the foregoing are annexed as **Exhibit X** to the Ben Hooren Declaration.

46.    The Fraudulent Trademark Application was signed on behalf of the Defendant corporation by its President, Assaf Ran, fully 3 ½ years after Plaintiff's filing of the exact same trademark registration for the exact same goods and with the Defendants being fully aware of the existence and prior use of Plaintiff's "Kosher Yellow Pages" telephone directory.

47.    Yet, incredibly, notwithstanding the foregoing, the Defendant, Assaf Ran, proceeded to execute an affidavit in connection with the Fraudulent Trademark Application under explicit warning of the penalties of perjury which stated, in relevant part, that

"he [Assaf Ran]...believes the applicant to be the owner of the trademark...sought to be registered...he...believes the applicant to be entitled to use such mark in commerce; to the best of his...knowledge and belief no other person, firm, corporation, or association has the right to use the [Kosher Yellow Pages] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person to cause confusion, or to cause mistake, or to deceive...".

48.     The Fraudulent Trademark Application was assigned a serial number of 76/455772 (the "Serial Number") and was subsequently denied registration on the Principal Register by the PTO examining attorney on the grounds that the mark was merely descriptive. Subsequently, the Defendants have sought to have the mark registered on the Supplemental Register. A copy of a letter to the PTO by Defendants attorney amending the Fraudulent Trademark Application to seek registration on the Supplemental Register instead of the Principal Register is annexed as **Exhibit Y** to the Ben Hooren Declaration.

49,     Such a registration on the Supplemental Register by the Defendants is in and of itself an acknowledgement by Defendants that the "Kosher Yellow Pages" mark sought to be registered by them is merely descriptive. Interestingly, if the Defendants had indeed been using the "Kosher Yellow Pages" mark in connection with telephone directories as far back as 1995 (as they claim to have done in their affidavit to the PTO), then they should have been able to overcome the PTO examining attorney's objection to registration by demonstrating or at least alleging secondary meaning over this nearly 9 year period of use. They did not because they could not. Accordingly, on November 12, 2003 this mark was approved for registration by the PTO on the Supplemental Register and at present is awaiting the issuance of a registration number by the PTO.

50.     Subsequent to the date Plaintiff began using "Kosher Yellow Pages" mark and trade name, but at precise times unknown to Plaintiff, the Defendants have improperly assumed, utilized, displayed, and disseminated the Plaintiff's protected trade name and mark "Kosher Yellow Pages" in conjunction with Defendants business, including, but not limited to, the publication of a competing telephone directory utilizing Plaintiff's "Kosher Yellow Pages" trade name and mark.

51.     Subsequent to the date Plaintiff began using "Kosher Yellow Pages" mark and trade name, but at precise times unknown to Plaintiff, the Defendants began to display, advertise, promote, and sell advertisements in its competing telephone directory utilizing Plaintiff's "Kosher Yellow Pages" trade name and mark.     Specifically, Defendants have infringed upon Plaintiff's right to the sole and exclusive use of Plaintiff's Kosher Yellow Pages trade name and mark in identifying its telephone directories in that the Defendants have, *inter alia*:

>    (a)   Publicly used, advertised, and promoted as its own the Plaintiff's "KOSHER YELLOW PAGES" mark and trade name and mark in and on its posted signs, telephone directories, billboards, and other openly displayed messages;
>
>    (b)   Publicly used, advertised, and promoted as its own the Plaintiff's "KOSHER YELLOW PAGES" mark and trade name in its promotions, advertising, telephone directories, broadcasts, and announcements, including, but not limited to, promotional coupons, flyers, advertisements, listings, and literature;
>
>    (c)   Openly used, advertised, and promoted as its own the Plaintiff's "KOSHER YELLOW PAGES" mark and trade name in its corporate documents, literature, letterhead, telephone directories, brochures, and other mediums of public dissemination;
>
>    (d)   Placed or caused to be placed, advertisements in various widely circulated and widely read newspapers, bulletins, magazines, and flyers using Plaintiff's "KOSHER YELLOW PAGES" mark and trade name in a form employed by the Plaintiff for many years;

(e) Imitated, copied and made infringing use, design and distribution of Plaintiff's KOSHER YELLOW PAGES mark and trade name;

(f) Manufactured, assembled, produced, reproduced, distributed, offered for distribution, circulated, advertised, promoted and displayed its telephone directory bearing a simulation to Plaintiff's KOSHER YELLOW PAGES mark and trade name;

(g) Used a designation of origin or description which misleads people to reasonably believe that Defendants infringing directory bearing Plaintiff's "KOSHER YELLOW PAGES" mark and trade name was manufactured, assembled, produced, distributed, offered for distribution, circulation, sold offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved or authorized by or for Plaintiff, when such was, and is, not true in fact;

(h) Engaged in such other activity constituting an infringement of any of Plaintiff's protected rights in and to the "KOSHER YELLOW PAGES" mark and trade name or performed any of the activities referred to in the above subparagraphs (a) to (g); and

(i) Falsely misrepresented to the United States Patent and Trademark Office, to the United States Securities and Exchange Commission, to its shareholders and to other third parties, that it is the sole and lawful owner of Plaintiff's "KOSHER YELLOW PAGES" mark and trade name.

## AS AND FOR A FIRST CAUSE OF ACTION
### Defendants False Designation of Origin, False
### Descriptions of Fact and False Representations
### In Direct Violation of the Lanham Act

52.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of the complaint as if fully set forth herein.

53.     Defendants have affixed, applied, or used in connection with the promotion and sale of its goods and services, false descriptions and representations, which tend to falsely describe or represent that the goods and services offered by Defendants are sponsored by, authorized by or connected with Plaintiff.

54.     The activities of Defendants complained of herein constitute willful and intentional uses, appropriations and infringements of Plaintiff's "Kosher Yellow Pages"

valuable trade name and mark; completely and deliberately disregard Plaintiff's rights and were commenced and have continued in spite of Defendants knowledge that the use of a simulation or colorable imitation of Plaintiff's "Kosher Yellow Pages" trade name and mark was and is in direct contravention of Plaintiff's rights.

55.     Defendants have marketed, distributed and sold goods and services in connection with a colorable imitation and simulation of the Plaintiff's "Kosher Yellow Pages" trade name and mark with the express intent of causing confusion and mistake, of deceiving and misleading the purchasing and consuming public to buy, use or otherwise trade in its products or services in the erroneous belief that they were relying upon the reputation of the Plaintiff; and in so doing, the Defendants have improperly appropriated the valuable trade name and mark of Plaintiff.

56.     The use by Defendants of exact and identical copies of the Plaintiff's trade name and mark on the exact same goods as Plaintiff's has been without the Plaintiff's consent, is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that the Defendants are authorized by, approved by, sponsored by, or connected with Plaintiff. Copies of Fourteen (14) sworn affidavits evidencing such actual confusion in the marketplace are collectively annexed as **Exhibit V** to the Ben Hooren Declaration.

57.     By reason of the foregoing, Plaintiff has no adequate remedy at law, has suffered great and irreparable damage not fully measurable in monetary terms and will continue to suffer such irreparable damage unless Defendants are enjoined and restrained from such continued unlawful conduct.

## AS AND FOR A SECOND CAUSE OF ACTION
### Unfair Business Competition in Violation of
### New York's General Business Law §349

58.     Plaintiff repeats, realleges, and incorporates herein by reference each and every allegation contained in the prior paragraphs of the complaint as thought set forth in detail herein.

59.     Plaintiff's protected trade name "Kosher Yellow Pages" has been in continuous use by Plaintiff since 1999.

60.     Said trade name and mark is and has been used by Plaintiff on a large variety of different representative, promotional, and advertising articles and products, and have identified and now identify the Plaintiff and its Jewish telephone directory business at the exclusion of all others.

61.     By reason of Plaintiff's use of its trade name and mark the "Kosher Yellow Pages", Plaintiff has become and is now well and favorably known in the geographic areas that Plaintiff services as identifying Plaintiff's telephone directory. Accordingly, Plaintiff has built up an extensive business by reason of the good will and reputation attaching thereto and has acquired common law trademark rights therein as well as the exclusive right to the use thereof.

62.     Since 1999, Plaintiff has consistently expended, and continues to expend, in excess of tens of thousands of dollars annually in advertising, promoting, publicizing and broadcasting its Kosher Yellow Pages trade name, mark and website as representing Plaintiff's corporate business, products, and services. Plaintiff regularly advertises in the New York area, and has for many years openly and actively promoted its Kosher Yellow

Pages trade name and mark in connection with the sale and distribution of its telephone
directories.

63.     Plaintiff's "Kosher Yellow Pages" telephone directory has acquired a
unique reputation that has become well known to the general public and trade as being of
the very highest quality and dependability.  Plaintiff's "Kosher Yellow Pages" telephone
directory has also acquired an enviable reputation amongst the general public and trade
for substantial and sound values and service to its customers.  Plaintiff's "Kosher Yellow
Pages" telephone directory is unique in the position of eminence it has attained and is
considered by the public as an institution, its name synonymous with excellence and the
highest quality.

64.     The name "Kosher Yellow Pages" when commonly used in the limited
field in which the parties are active in business, that being the publishing and distributing
of telephone directories in print and on the world wide web to targeted niche markets of
the Jewish Communities in New York, New Jersey and Florida, has acquired a secondary
meaning and association with Plaintiff and with no other.

65.     Accordingly, the "Kosher Yellow Pages" name and mark has come to
have a secondary meaning indicative of origin, relationship, sponsorship and association
with Plaintiff and with no other.

66.     Subsequent to the date of Plaintiff's first use, promotion and continuation
of the trade name and mark of its "Kosher Yellow Pages" telephone directory,
Defendants adopted Plaintiff's trade name and mark in commerce with full knowledge of
the fact that the "Kosher Yellow Pages" is the trade name, mark and identification of the
Plaintiff, its business, and competing telephone directory, and that said trade name and

20

mark is associated in the public mind with Plaintiff and its business, and with full knowledge of the rights of the Plaintiff in and to said name and without any commercial necessity, legitimate reason or satisfactory explanation for such action.

67.    The use by Defendants of Plaintiff's trade name and mark "Kosher Yellow Pages" to identify their competing telephone directory is made for the purpose of taking advantage of the reputation and the good will that the Plaintiff has gained by the sustained excellence and character of Plaintiff's "Kosher Yellow Pages" telephone directory's service and products and by years of advertising and the expenditure of vast sums of money and effort, and is for the purpose of deceiving, misleading, and confusing the public and leading those with whom Defendants may deal to believe by the Defendants unlawful use of "Kosher Yellow Pages" mark and trade name the Plaintiff was and is in some way connected or affiliated with the Defendants and/or their products.

68.    Defendants have, and continue to, infringe upon Plaintiff's right to the sole and exclusive use of Plaintiff's "Kosher Yellow Pages" mark and trade name by unlawfully misleading the public into believing that the Defendants business and competing telephone directories are in some way associated with Plaintiff or are advertised, distributed, and sold under Plaintiff's sponsorship and authority.

69.    Defendants have thereby traded, and continue to trade, upon the good will created by the Plaintiff and its "Kosher Yellow Pages" telephone directory, have infringed and are now infringing upon Plaintiff's "Kosher Yellow Pages" trade name and mark and have competed and are competing unfairly with Plaintiff, all to Plaintiff's detriment and damage.

21

70.     Defendants use of Plaintiff's "Kosher Yellow Pages" mark and trade name occurred and is occurring without the consent, authority, or permission of Plaintiff and constitutes the unlawful use by the Defendants, in commerce, of Plaintiff's said mark and trade name "Kosher Yellow Pages" or colorable imitations thereof, in connection with Defendants business.

71.     Such use by Defendants has caused and continues to cause confusion and mistake, has and continues to deceive customers and constitutes unfair competition and infringement of Plaintiff's aforesaid trade name and mark all in violation of the laws of the State of New York.

72.     Plaintiff's business has been, and continues to be injured, diminished, and damaged by reason of the loss of good will, diminution of business reputation, dilution of the distinctive quality of its said "Kosher Yellow Pages" trade name and mark, and has caused Plaintiff to incur expenses in efforts to distinguish the Plaintiff's business, products and services from those of the Defendants, all caused by the aforesaid use by Defendants of Plaintiff's "Kosher Yellow Pages" trade name and mark and the above-mentioned acts of infringement and unfair competition.

73.     By reason of these facts and circumstances aforementioned, Plaintiff has been and is now and hereafter hindered and unlawfully interfered with by the Defendants use of the words "Kosher Yellow Pages" to identify Defendants competing telephone directory and will be damaged by the diversion of its customers and trade name and that Plaintiff will suffer great and irreparable loss and damage in money, good will, and reputation. Copies of Fourteen (14) sworn affidavits evidencing such actual confusion in the marketplace are collectively annexed as **Exhibit K** to the Ben Hooren Declaration.

22

74. By reason of the foregoing, Plaintiff has no adequate remedy at law, has suffered great and irreparable damage not fully measurable in monetary terms and will continue to suffer such irreparable damage unless Defendants are enjoined and restrained from such continued unlawful conduct.

## AS AND FOR A THIRD CAUSE OF ACTION
### Infringement of Plaintiff's Protected Trade Name and Mark
### In Violation of New York General Business Law §360-K

75. Plaintiff repeats, realleges, and incorporates herein by reference each and every allegation contained in the prior paragraphs of the complaint as though set forth in detail herein.

76. Since 1999, Plaintiff has been actively conducting its telephone directory business under the mark and trade name of "Kosher Yellow Pages", including, but not limited to, the open display, use and publication of the "Kosher Yellow Pages" mark and trade name on Plaintiff's business signs, stationery, advertising, literature and employee uniforms in connection with the sale of advertisements and publication of its directory listings to the general public.

77. Plaintiff continues to use the Kosher Yellow Pages mark and trade name on its telephone directories, which is characteristic and consistent with its corporate existence and purposes.

78. Plaintiff's "Kosher Yellow Pages" telephone directory has been extensively used by Plaintiff over the years, the same being reflected in all of Plaintiff's corporate data as aforesaid, all of which has been definitely associated in the minds of the public with the Plaintiff and which has become recognized and well-known throughout the geographic areas that Plaintiff services.

23

79.    By reason of Plaintiff's use of its trade name and mark the "Kosher Yellow Pages", Plaintiff has become and is now well and favorably known in the geographic areas that Plaintiff services as identifying Plaintiff's telephone directory. Accordingly, Plaintiff has built up an extensive business by reason of the good will and reputation attaching thereto and has acquired common law trademark rights therein as well as the exclusive right to the use thereof.

80.    Since 1999, Plaintiff has consistently expended, and continues to expend, in excess of tens of thousands of dollars annually in advertising, promoting, publicizing and broadcasting its Kosher Yellow Pages trade name, mark and website as representing Plaintiff's corporate business, products, and services. Plaintiff regularly advertises in the New York area, and has for many years openly and actively promoted its Kosher Yellow Pages trade name and mark in connection with the sale and distribution of its telephone directories.

81.    The name "Kosher Yellow Pages" when commonly used in the limited field in which the parties are active in business, that being the publishing and distributing of telephone directories in print and on the world wide web to targeted niche markets of the Jewish Communities in New York, New Jersey and Miami, has acquired a secondary meaning and association with Plaintiff and with no other.

82.    Accordingly, the "Kosher Yellow Pages" name and mark has come to have a secondary meaning indicative of origin, relationship, sponsorship and association with Plaintiff and with no other.

83.     Plaintiff has received significant and unsolicited media coverage verifying and supporting Plaintiff's long use of and recognition in the public eye under its trade name and mark "Kosher Yellow Pages".

84.     For at least the past four (4) years, Plaintiff has achieved and sustained significant and substantial sales operating as and under its trade name and mark of "Kosher Yellow Pages".

85.     For at least the past four (4) years, Plaintiff has operated and conducted business exclusively under the trade name and mark of "Kosher Yellow Pages".

86.     Defendants are in the same business as the Plaintiff in that they also produce and distribute telephone directories targeted at the same Jewish communities serviced by Plaintiff.  As such, Defendants principal operations are identical and/or substantially similar to Plaintiff's.

87.     Subsequent to the date of Plaintiff's first use in commerce of the "Kosher Yellow Pages" mark and trade name, the Defendants began using the exact same name as Plaintiff's, "Kosher Yellow Pages" to identify their competing telephone directory.

88.     The name selected by the Defendants for their competing telephone directory and the adoption and use by the Defendants of the Plaintiff's identical mark and trade name "Kosher Yellow Pages" on their competing telephone directory, has misled and will continue to mislead the public, which has identified and will continue to identify the business of the Defendants as the activities of the Plaintiff and more particularly will mislead, confuse and deceive those patrons of the Plaintiff who are or intend to become customers to Plaintiff's, all of which constitute an unfair and unlawful competition against Plaintiff. Copies of Fourteen (14) sworn affidavits evidencing such actual

confusion in the marketplace are collectively annexed as **Exhibit K** to the Ben Hooren
Declaration.

89.     At the time of Defendants unlawful publication of their directory bearing
the exact same name as Plaintiff's "Kosher Yellow Pages" mark and trade name on the
exact same goods as Plaintiff's, Defendants knew or should have known that Plaintiff had
theretofore, and was then continuing in and, conducting the business hereinbefore
mentioned under "Kosher Yellow Pages" trade name and mark and that said trade name
and mark was known to the public as the Plaintiff's in connection with and to identify the
business name Plaintiff presently uses for its corporation and its telephone directory
publication.

90.     To date, large numbers of the general public (including users, advertisers,
suppliers, vendors, printers as well as others affiliated and involved in the yellow page
directory listing and printing industry) have been confused and deceived by Defendants
said wrongful conduct. As a result of Defendants wrongful acts, the public has been
confused and deceived into believing that Defendants infringing telephone directory
bearing the exact same name as Plaintiff's "Kosher Yellow Pages" mark and trade name,
is a part of or authorized by Plaintiff and that the services to be rendered to such public
would be of a superior quality in conformity with Plaintiff's "Kosher Yellow Pages"
directory's reputation and good will.

91.     Defendants activities described aforesaid have caused and will continue to
cause their business to be mistaken for the business, services, and good will of Plaintiff's
Kosher Yellow Pages directory, have caused and will continue to cause confusion
between Plaintiff's business, services and good will and those of Defendants, and have

26

misled and will mislead the trade and the public into the false belief that Plaintiff and Defendants are affiliated or that Defendants business and services have their source in the Plaintiff or are sponsored by the Plaintiff or are associated with Plaintiff in the course of trade.

92.     Defendants use of Plaintiff's "Kosher Yellow Pages" mark and trade name occurred and is occurring without the consent, authority, or permission of Plaintiff and constitutes the unlawful use by the Defendants, in commerce, of Plaintiff's "Kosher Yellow Pages" mark and trade name or colorable imitations thereof, in connection with Defendants business.

93.     Plaintiff has demanded that Defendants cease and desist from their misuse of Plaintiff's "Kosher Yellow Pages" mark and trade name but Defendants have failed and refused to comply with such demand.

94.     By reason of the foregoing, Plaintiff has no adequate remedy at law, has suffered great and irreparable damage not fully measurable in monetary terms and will continue to suffer such irreparable damage unless Defendants are enjoined and restrained from such continued unlawful conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Injury to Plaintiff's Business Reputation and Dilution
### In Violation of New York General Business Law §360-L

95.     Plaintiff repeats, realleges, and incorporates herein by reference each and every allegation contained in the prior paragraphs of the complaint as set forth in detail herein.

96.     Since 1999, Plaintiff and its phone directory listings, has been actively conducting business under the mark and trade name "Kosher Yellow Pages", including,

27

but not limited to, the open display, use and publication of the "Kosher Yellow Pages" mark and trade name in and on Plaintiff's business signs, stationery, advertising, literature and employee uniforms in connection with the sale of advertisements and publication of its directory listings to the general public.

97.   Plaintiff continues to use the Kosher Yellow Pages mark and trade name on its telephone directories, which is characteristic and consistent with its corporate existence and purposes.

98.   Since 1999, Plaintiff has consistently expended, and continues to expend, in excess of tens of thousands of dollars annually in advertising, promoting, publicizing and broadcasting its Kosher Yellow Pages mark and trade name as representing Plaintiff's corporate business, products, and services. Plaintiff regularly advertises in the New York area, and has for many years openly and actively promoted its Kosher Yellow Pages trade name and mark in connection with the sale and distribution of its telephone directories.

99.   The name "Kosher Yellow Pages" when commonly used in the limited field in which the parties are active in business, that being the publishing and distributing of telephone directories in print and on the world wide web to targeted niche markets of the Jewish Communities in Brooklyn, New York, Deal, New Jersey and Miami, Florida, has acquired a secondary meaning and association with Plaintiff and with no other.

100.   Accordingly, the "Kosher Yellow Pages" name and mark has come to have a secondary meaning indicative of origin, relationship, sponsorship and association with Plaintiff and with no other.

101.   Plaintiff's "Kosher Yellow Pages" telephone directory has been extensively used by Plaintiff over the years, the same being reflected in all of Plaintiff's corporate data as aforesaid, all of which has been definitely associated in the minds of the public with the Plaintiff and which has become recognized and well-known throughout the geographic areas that Plaintiff services.

102.   By reason of Plaintiff's use of its trade name and mark the "Kosher Yellow Pages", Plaintiff has become and is now well and favorably known in the geographic areas that Plaintiff services as identifying Plaintiff's telephone directory. Accordingly, Plaintiff has built up an extensive business by reason of the good will and reputation attaching thereto and has acquired common law trademark rights therein as well as the exclusive right to the use thereof.

103.   Subsequent to the date of Plaintiff's first use of the Kosher Yellow Pages mark in commerce to identify its telephone directories, but at precise times unknown to Plaintiff, the Defendants began to display, advertise, promote, and sell advertisements in its competing telephone directory utilizing Plaintiff's "Kosher Yellow Pages" trade name and mark. Specifically, Defendants have infringed upon Plaintiff's right to the sole and exclusive use of Plaintiff's "Kosher Yellow Pages" trade name and mark in identifying its telephone directories in that the Defendants have, *inter alia*:

> (a) Publicly used, advertised, and promoted as its own the Plaintiff's "KOSHER YELLOW PAGES" mark and trade name and mark in and on its posted signs, telephone directories, billboards, and other openly displayed messages;
>
> (b) Publicly used, advertised, and promoted as its own the Plaintiff's "KOSHER YELLOW PAGES" mark and trade name in its promotions, advertising, telephone directories, broadcasts, and announcements, including, but not limited to, promotional coupons, flyers, advertisements, listings, and literature;

29

(c) Openly used, advertised, and promoted as its own the Plaintiff's "KOSHER YELLOW PAGES" mark and trade name in its corporate documents, literature, letterhead, telephone directories, brochures, and other mediums of public dissemination;

(d) Placed or caused to be placed, advertisements in various widely circulated and widely read newspapers, bulletins, magazines, and flyers using Plaintiff's "KOSHER YELLOW PAGES" mark and trade name in a form employed by the Plaintiff for many years;

(e) Imitated, copied and made infringing use, design and distribution of Plaintiff's KOSHER YELLOW PAGES mark and trade name;

(f) Manufactured, assembled, produced, reproduced, distributed, offered for distribution, circulated, advertised, promoted and displayed its telephone directory bearing a simulation to Plaintiff's KOSHER YELLOW PAGES mark and trade name;

(g) Used a designation of origin or description which leads people to reasonably believe that Defendants infringing directory bearing Plaintiff's "KOSHER YELLOW PAGES" mark and trade name was manufactured, assembled, produced, distributed, offered for distribution, circulation, sold offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved or authorized by or for Plaintiff, when such was, and is, not true in fact;

(h) Engaged in such other activity constituting an infringement of any of Plaintiff's protected rights in and to the "KOSHER YELLOW PAGES" mark and trade name or performed any of the activities referred to in the above subparagraphs (a) to (g); and

(i) Falsely misrepresented to the public, to the United States Patent and Trademark Office, to the United States Securities and Exchange Commission, to its shareholders and to other third parties, that it is the sole and lawful owner of Plaintiff's "KOSHER YELLOW PAGES" mark and trade name.

104. To date, large numbers of the general public (including users, advertisers,

suppliers, vendors, printers as well as others affiliated and involved in the yellow page

directory listing and printing industry) have been confused and deceived by Defendants

said wrongful conduct. As a result of Defendants wrongful acts, the public has been

confused and deceived into believing that Defendants infringing directory bearing the

exact same name as Plaintiff's "Kosher Yellow Pages" mark and trade name, is a part of

or authorized by Plaintiff and that the services to be rendered to such public would be of

a superior quality in conformity with Plaintiff's "Kosher Yellow Pages" directory's reputation and good will.

105.   Defendants use of Plaintiff's "Kosher Yellow Pages" mark and trade name occurred and is occurring without the consent, authority, or permission of Plaintiff and constitutes the unlawful use by the Defendants, in commerce, of Plaintiff's said mark and trade name "Kosher Yellow Pages" or colorable imitations thereof, in connection with Defendants business.

106.   Plaintiff has and will continue to lose control exercise and dominion over the reputation of its distinctive "Kosher Yellow Pages" trade name and mark as a direct result of Defendants wrongful acts.

107.   Plaintiff has demanded that Defendants cease and desist from their misuse of Plaintiff's "Kosher Yellow Pages" trade name and mark but Defendants have failed and refused to comply with such demand.

108.   By reason of the foregoing, Plaintiff has no adequate remedy at law, has suffered great and irreparable damage not fully measurable in monetary terms and will continue to suffer such irreparable damage unless Defendants are enjoined and restrained from such continued unlawful conduct.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### Use of Plaintiff's Name With Intent to Deceive
#### In Violation of New York General Business Law §133

109.   Plaintiff repeats, realleges, and incorporates herein by reference each and every allegation contained in the prior paragraphs of the complaint as though set forth in detail herein.

110.    Plaintiff's protected "Kosher Yellow Pages" mark and trade name has been in use by Plaintiff since 1999.

111.    By reason of the matters set forth herein, Plaintiff, and its trade name and service mark, "Kosher Yellow Pages" have become well and favorably known to the trade and the public and said name and mark has become the means by which Plaintiff and its services are identified and said name and mark has come to symbolize a valuable good will which Plaintiff enjoys.

112.    Since 1999, Plaintiff has consistently expended, and continues to expend, in excess of tens of thousands of dollars annually in advertising, promoting, publicizing and broadcasting its Kosher Yellow Pages trade name, mark and website as representing Plaintiff's corporate business, products, and services.  Plaintiff regularly advertises in the New York area, and has for many years openly and actively promoted its Kosher Yellow Pages trade name and mark in connection with the sale and distribution of its telephone directories.

113.    Defendants are in the exact same business as the Plaintiff in that they also produce and distribute telephone directories targeted at the exact same Jewish communities serviced by Plaintiff.  As such, Defendants principal operation is identical and/or substantially similar to Plaintiff's.

114.    The name "Kosher Yellow Pages" when commonly used in the limited field in which the parties are active in business, that being the publishing and distributing of telephone directories in print and on the world wide web to targeted niche markets of the Jewish Communities in New York, New Jersey and Florida, has acquired a secondary meaning and association with Plaintiff and with no other.

115.    Accordingly, the "Kosher Yellow Pages" name and mark has come to have a secondary meaning indicative of origin, relationship, sponsorship and association with Plaintiff and with no other.

116.    Defendants selection of the exact same name Plaintiff's "Kosher Yellow Pages" mark and trade name on the cover of its competing telephone directory was so selected with the intent to deceive the public, suppliers, users, buyers and sellers in the field of its principal operations in order that Defendants be enabled to capitalize on the reputation and substantial good will created and owned by Plaintiff's "Kosher Yellow Pages".

117.    At the time of Defendants unlawful publication of their directory bearing the cover page using Plaintiff's "Kosher Yellow Pages" mark and trade name, Defendants were aware of or knew or should have known the fact that the Plaintiff had theretofore and was then continuing in and conducting the business hereinbefore mentioned under the name of "Kosher Yellow Pages" and that said trade name and mark was known to the public as the Plaintiff's in connection with and to identify its business name it presently uses for its corporation and its telephone directory publication.

118.    The name selected by the Defendants for their competing telephone directory and the adoption and use by the Defendants of the words "Kosher Yellow Pages" in the cover page of their competing telephone directory, have misled and will continue to mislead the public, which has identified and will continue to identify the business of the Defendants as the activities of the Plaintiff and more particularly will mislead, confuse and deceive those patrons of the Plaintiff who are or intend to become customers to Plaintiff's, all of which constitute an unfair and unlawful competition

33

against Plaintiff. Fourteen (14) separate sworn affidavits evidencing such actual confusion in the marketplace are collectively annexed as **Exhibit K** to the Ben Hooren Declaration.

119.    To date, large numbers of the general public (including users, advertisers, suppliers, vendors, printers as well as others affiliated and involved in the yellow page directory listing and printing industry) have been confused and deceived by Defendants said wrongful conduct. As a result of Defendants wrongful acts, the public has been confused and deceived into believing that Defendants infringing directory bearing the cover page using Plaintiff's "Kosher Yellow Pages" mark and trade name, is a part of or authorized by Plaintiff and that the services to be rendered to such public would be of a superior quality in conformity with Plaintiff's "Kosher Yellow Pages" directory's reputation and good will.

120.    Plaintiff has demanded that Defendants cease and desist from their misuse of Plaintiff's name and mark "Kosher Yellow Pages" but Defendants have failed and refused to comply with such demand.

121.    Defendants use of Plaintiff's "Kosher Yellow Pages" trade name and mark in its advertising, sales and particularly on the cover of their competing telephone directory has impaired and will continue to impair the distinctive value of such name and mark and the business reputation of Plaintiff and its "Kosher Yellow Pages" telephone directory and its related services.

122.    By reason of the foregoing, Plaintiff has no adequate remedy at law, has suffered great and irreparable damage not fully measurable in monetary terms and will

continue to suffer such irreparable damage unless Defendants are enjoined and restrained from such continued unlawful conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION
### CANCELATION OF DEFENDANTS UNLAWFULLY REGISTERED "KOSHER YELLOW PAGES" MARK ON THE SUPPLEMENTAL REGISTER PURSUANT TO 15 USC §1119

123.     Plaintiff repeats, realleges, and incorporates herein by reference each and every allegation contained in the prior paragraphs of the complaint as thought set forth in detail herein.

124.     In 1998 Plaintiff first started using the trade name and mark the "Kosher Yellow Pages" and on February 16, 1999, Plaintiff filed a trademark application with the United States Patent and Trademark Office in Washington D.C. (the "PTO") for registration of its mark "Kosher Yellow Pages" on the Principal Register for use with Telephone Directories in International Class 16. A copy of a Document Display Page taken from the U.S. Patent and Trademark Office's Web Page evidencing the foregoing is annexed as Exhibit M to the Ben Hooren Declaration.

125.     Subsequent to this filing, the PTO examining attorney denied Plaintiff registration of the mark finding that the mark was merely descriptive. Rather than apply for registration on the Supplemental Register, which is itself an acknowledgement of a mark's descriptiveness, Plaintiff opted instead to abandon its pursuit of registering the mark at such time and instead to reapply for registration of the mark at such time as it could demonstrate that its "Kosher Yellow Pages" mark had acquired a secondary meaning, entitling it to registration of the mark on the Principal Register.

126. Accordingly, since 1999 to the present date, Plaintiff has expended hundreds of thousands of dollars in the printing, promotion, marketing, distribution, advertising and sale of its "Kosher Yellow Pages" trade name, website and mark and has distributed tens of thousands of its "Kosher Yellow Pages" telephone directories. Accordingly, Plaintiff's use of the "Kosher Yellow Pages" mark to identify its telephone directories has now acquired a secondary meaning sufficient to overcome any claim of descriptiveness so that Plaintiff is at present entitled to registration of its "Kosher Yellow Pages" mark on the Principal Register.

127. On September 30, 2002, fully three and one-half (3 ½) years following Plaintiff's filing its trademark application with the PTO for registration of its "Kosher Yellow Pages" mark, the Defendants filed an application with the PTO attempting to register the "Kosher Yellow Pages" mark as their own on the Principal Register (the "Fraudulent Trademark Application").

128. The Fraudulent Trademark Application was signed on behalf of the Defendant corporation by its President, Assaf Ran, fully 3 ½ years after Plaintiff's filing of the exact same trademark registration and with Defendants being fully aware of the existence of Plaintiff's "Kosher Yellow Pages" telephone directory.

129. Yet, incredibly, notwithstanding the foregoing, Assaf Ran proceeded to execute an affidavit in connection with the Fraudulent Trademark Application under explicit warning of the penalties of perjury which stated, in relevant part, that:

> "he [Assaf Ran]...believes the applicant to be the owner of the trademark...sought to be registered...he...believes the applicant to be entitled to use such mark in commerce; to the best of his...knowledge and belief no other person, firm, corporation, or association has the right to use the

> [Kosher Yellow Pages] mark in commerce, either in the
> identical form thereof or in such near resemblance thereto
> as to be likely, when used on or in connection with the
> goods/services of such other person to cause confusion, or
> to cause mistake, or to deceive…".

A copy of the Defendants Fraudulent Trademark Application is annexed as
Exhibit U to the Ben Hooren Declaration.

130.    The Fraudulent Trademark Application was assigned a serial number of
76/455772 (the "Serial Number") and was subsequently denied registration on the
Principal Register by the PTO examining attorney on the grounds that the mark was
merely descriptive. Subsequently, the Defendants sought to have the mark registered on
the Supplemental Register.

131.    Such a registration on the Supplemental Register by the Defendants is in
and of itself an express acknowledgment by Defendants that the "Kosher Yellow Pages"
mark sought to be registered by them is merely descriptive.   Interestingly, if the
Defendants had indeed been using the "Kosher Yellow Pages" mark in connection with
telephone directories as far back as 1995 (as they claim to have done in their affidavit to
the PTO), then they should have been able to overcome the PTO examining attorney's
objection to registration by demonstrating or at least alleging secondary meaning over
this nearly 8 year period of use from 1995 to 2003. The Defendants did not because they
could not. Accordingly, on November 12, 2003 this mark was approved for registration
by the PTO on the Supplemental Register and at present is awaiting the issuance of a
registration number by the PTO.

132.    In support of the Fraudulent Trademark Application, the Defendants
submitted specimens to the United States Patent and Trademark Office purporting to

evidence their use of the "Kosher Yellow Pages" mark in connection with telephone directories since February 20, 2995, the date claimed by Defendants in their Fraudulent Trademark Application as the date of first use of the "Kosher Yellow Pages" mark in interstate commerce.

133.   However, the specimens submitted by the Defendants to the PTO fail to establish any such date of first use. Most notably, the Defendants submitted two (2) specimens to the PTO in support thereof. Copies of both of these specimens are attached to Defendant's Fraudulent Trademark Application to the PTO trademark and are annexed as **Exhibit K** to the Ben Hooren Declaration.

134.   The first submitted specimen was of an undated advertising contract purporting to be one that was used by the Defendant since February 20, 1995. Interestingly, instead of submitting the actual "Kosher Yellow Pages" publication itself as a specimen to evidence their use of the mark in commerce, the Defendants instead submitted an undated Advertising Contract purporting to be for their "Kosher Yellow Pages" telephone directory. If that were indeed the case, then it should be fairly simple for the Defendants to produce a 1996 edition of the Kosher Yellow Pages. Presumably, advertisers who have paid for advertisements on the Kosher Yellow Pages Advertising Contract in 1995 could reasonably expect to see their advertisements in such a publication at least a year later. Yet, no such "Kosher Yellow Pages" publication was produced by the Defendants.

135.   In addition, because of the fact that this specimen was conveniently undated, other than the affidavit of the co-Defendant Assaf Ran, there is nothing by which to measure the veracity of this statement. However, as noted above, if in fact the

Defendant had been using the "Kosher Yellow Pages" name and mark to identify any of its telephone directories since February 20, 1995 as Mr. Ran swore to in the application to the United States Patent and Trademark Office, then, at a bare minimum, some mention of this use would of necessity have had to have been made to the corporate Defendant's shareholders as well as the United States Securities and Exchange Commission in the filing of any its Annual Reports. As noted above, as recent as the corporate Defendant's 2002 Annual Report, there is no mention whatsoever of any such use. Accordingly, the first specimen cannot be deemed credible as establishing the Defendants use of the "Kosher Yellow Pages" mark on February 20, 1995, its claimed date of first use.

136.    The second specimen submitted by the Defendant in support of its February 20, 1995 date of first use of the "Kosher Yellow Pages" mark is a single page with a photograph of three (3) telephone directories marketed by the corporate Defendant, to wit, directories titled "New Yellow", Dapey Assaf" and "The Jewish Master Guide 2000". The caption below two of the pictures of the business directories accurately described the business directory pictured immediately above it except that in the case of the picture of "The Jewish Master Guide 2000", the caption purporting to describe this business directory directly below it read "The Kosher Yellow Pages". The Defendant further circled this directory as if to highlight that it was relying on this directory to establish to the PTO examining attorney its use of the "Kosher Yellow Pages" mark in connection with business directories.

137.    Clearly, this specimen displayed a publication mis-labeled as "The Jewish Master Guide" and attempted to pass it off as "The Kosher Yellow Pages". Moreover,

39

the date shown on this Jewish Master Guide 2000 publication was 2000 and not 1995.
Accordingly, the second specimen cannot be deemed credible as establishing the
Defendant's use of the "Kosher Yellow Pages" mark on February 20, 1995, its claimed
date of first use.

138.    It is clear from the foregoing false specimens and the false declaration
made in Assaf Ran's affidavit that the Defendants statements and specimens submitted to
the United States Patent and Trademark Office were false and that accordingly, pursuant
to 15 U.S.C. Section 1119, this registration was fraudulently obtained by means of false
representations and specimens must be canceled.

139.    By reason of the foregoing, Plaintiff has no adequate remedy at law, has
suffered great and irreparable damage not fully measurable in monetary terms and will
continue to suffer such irreparable damage unless Defendants Registration of the "Kosher
Yellow Pages" mark on the Supplemental Register is canceled.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### ACCOUNTING

140.    Plaintiff repeats, realleges, and incorporates herein by reference each and
every allegation contained in the previous paragraphs of the complaint as thought set
forth in detail herein.

141.    Defendants unlawful conduct constitutes deceptive, fraudulent and
wrongful conduct.

142.    By virtue of their wrongful conduct, Defendants have illegally received
money and profits that rightfully belong to Plaintiff.

143.    Defendants hold the illegally received money and profits in the form of
bank accounts, real property or personal property that can be located and traced.

144    By reason of the foregoing Plaintiff has suffered great damage not fully measurable in monetary terms and will continue to suffer such irreparable damage unless Defendants is enjoined and restrained from such unlawful conduct.

145.    By reason of the foregoing Plaintiff has suffered great damage not fully measurable in monetary terms and will continue to suffer such irreparable damage.

146.    Defendants have made and will make profits that equitably belong to Plaintiff.

147.    Plaintiff is entitled to, and demands, an accounting to determine the profits made by the Defendants and the damages suffered by the Plaintiff due to Defendants unlawful infringement of Plaintiff's protected "Kosher Yellow Pages" mark and trade name. Plaintiff is entitled to an accounting from the Defendants because the amount of money due to Plaintiff is presently unknown to Plaintiff and cannot be ascertained without a detailed accounting provided by the Defendants of the precise number of revenues and profits that were illegally obtained by Defendants on the basis of it's illegal, infringing and dilutive use of the Plaintiff's Kosher Yellow Pages mark on their telephone directory.

**WHEREFORE** Plaintiff respectfully requests that this Court:

1. Declare that the Defendants willfully infringed on Plaintiff's protected KOSHER YELLOW PAGES mark and trade name, in violation of the Lanham Act, 15 U.S.C. §1121 *et seq*;

2. Declare that the Defendants willfully infringed on Plaintiff's protected KOSHER YELLOW PAGES mark and trade name, in violation of New York General Business Law §§133, 349, 360-K, 360-L, and 360-O *et seq*.;

3. Declare that the Defendants have engaged in unfair business practices in violation of New York common law;

4. Declare that the Defendants have injured Plaintiff's business reputation and business by their unlawful acts and conduct as set forth in this Complaint;

5. Order the cancellation of Defendant's unlawfully and fraudulently obtained "Kosher Yellow Pages" trademark registration on the Supplemental Register pursuant to 15 USC §1119 and certify such order to the Patent and Trademark Office;

6. Restrain, prohibit and enjoin, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Defendants, their respective officers, agents, servants, and/or employees from using the name "KOSHER YELLOW PAGES" or any other colorable imitation, simulation, derivation, or approximation thereof, either alone or in conjunction with other words in connection with the Defendant's business of operating a telephone directory publication;

7. Restrain, prohibit and enjoin the Defendants, their respective officers, agents, servants, and/or employees from using, displaying, exhibiting, advertising or otherwise utilizing the name and words "KOSHER YELLOW PAGES" in connection with their business;

8. Direct the Defendants, their respective officers, agents, servants, and/or employees to re-label all infringing products or packages, obliterate, delete, and remove their present use of the name and words "KOSHER YELLOW PAGES" from their business offices, signs, stationary, listings, telephone book covers, inside the telephone books, advertising, and wheresoever else the same may appear in connection with their business;

9. Restrain, prohibit and enjoin the Defendants, their respective officers, agents, servants, and/or employees from in any manner making representations likely or tending to lead the public into the belief that the business being conducted by the Defendants is the business of the Plaintiff or is in any way affiliated or connected therewith;

10. Declare that Defendants hold in trust, as constructive trustees for the benefit of Plaintiff, their illegal profits obtained from the distribution of infringing Kosher Yellow Pages telephone directories;

11. Enter an Order requiring Defendants to provide Plaintiff with a full and complete

accounting of all profits obtained from their marketing·or distribution of their unlawful and infringing Kosher Yellow Pages telephone directory and any other amounts due and owing to Plaintiff as a result of Defendants unlawful acts;

12. Order Defendants to pay Plaintiff's damages pursuant to 15 USC §1114, *et seq*;

13. Order Defendants to pay Plaintiff's general, special and actual damages as follows:

    a. Plaintiff's damages and its attorneys fees pursuant to New York General Business Law §360-M;

    b. Plaintiff's damages by having Defendants illegal profits trebled pursuant to New York General Business Law §360-M; and;

    c. Plaintiff's damages and Defendants profits pursuant to New York common law.

14. Grant Plaintiff such other and additional relief as is just and proper.

Dated: New York, New York
      February 24, 2004

By: _____

Terrence A. Oved, Esq. (TAO0418)
Darren Oved, Esq. (DO9337)
OVED & OVED LLP
*Attorneys for Plaintiff*
110 Greene Street, Suite 1102
New York, NY 10012
Tel: 212.226.2376

# CORPORATE VERIFICATION

STATE OF NEW YORK   )
                              )   ss.:
COUNTY OF KINGS   )

David Ben Hooren hereby affirms under the penalties of perjury the following:

1.        I am the President of THE JEWISH SEPHARDIC YELLOW PAGES, LTD d/b/a KOSHER YELLOW PAGES, Plaintiff in the action herein.

2.        I have read and know the contents of the foregoing **VERIFIED COMPLAINT** and that the same are true to my own knowledge, except as to the matters to be alleged on information and belief, and as to those matters I believe them be true.

3.        The grounds of my belief as to all matters in said **VERIFIED COMPLAINT** are statements of Defendants to Plaintiff, papers and records in Plaintiff's and Defendant's possession, and a general investigation and review of the facts and records in this case.

Dated: New York, New York
February 24, 2004

David Ben Hooren

Notary Public:

Sworn to before me on this
24th day of February 2004.

STEVEN J. CZIK
NOTARY PUBLIC, State of New York
No. 02CZ.6093914
Qualified in ... County
Commission Expires May 11, 20?6