Charles E. Baxley  (CB 8486)
Joseph T. Murray  (JM 3564)
Hart, Baxley, Daniels & Holton
*Attorneys for Defendants*
90 John Street, Suite 309
New York, New York 10038
Telephone 212-791-7200


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------

THE JEWISH SEPHARDIC YELLOW
PAGES, LTD. d/b/a KOSHER YELLOW
PAGES,

           *Plaintiff*

        - against -

DAG MEDIA, INC. and ASSAF RAN,

           *Defendants.*

--------------------------------------------------------

DAG MEDIA, INC. and ASSAF RAN,

           *Third-Party Plaintiff,*

        - against -

DAVID BEN-HOOREN,

           *Third-Party Defendant.*

--------------------------------------------------------

**CIVIL ACTION NO.  CV 04-747
(RJD) (RLM)**


**DEFENDANTS' ANSWER TO
VERIFIED COMPLAINT,
COUNTERCLAIM AND
THIRD PARTY COMPLAINT**


      Defendants, DAG Media, Inc. and Assaf Ran, for their Answer to the Verified Complaint of

Plaintiff, The Jewish Sephardic Yellow Pages, Ltd. d/b/a Kosher Yellow Pages, hereby respond as

follows:


- 1 -

## JURISDICTION AND VENUE

1.      Defendants, DAG Media, Inc. ("DAG Media") and Assaf Ran (collectively, "Defendants"), neither admit nor deny the allegations of paragraph 1, for those allegations purport to state a legal conclusion to which no response is required.

2.      Defendants deny the allegations of paragraph 2.

## THE PARTIES

3.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 3.

4.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 4.

5.      Defendants admit the allegations of paragraph 5.

6.      Defendants admit the allegations of paragraph 6.

## FACTUAL BACKGROUND

7.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 7.

8.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 8.

9.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 9.

10.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 10.

11.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 11.

12.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 12, except deny that the promotional materials attached as Exhibit E to the Ben-Hooren Declaration constitute evidence of Plaintiff's use of the mark "KOSHER YELLOW PAGES."

13.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 13.

14.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 14.

15.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 15.

16.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 16.

17.    Defendants deny the allegations of paragraph 17, except admit that, from in or about December 1998, DAG Media has published a telephone directory known as "The Kosher Yellow Pages," which is targeted at and distributed to the ultra-Orthodox and Hassidic Jewish communities.

18.    Defendants deny the allegations of paragraph 18.

19.    Defendants deny the allegations of paragraph 19.

20.    Defendants deny the allegations of paragraph 20, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning cancellation of advertising commitments, refusal of certain advertisers to pay, and the continued viability of Plaintiff's business.

21.     Defendants deny the allegations of paragraph 21, except admit that, from 1995, they have marketed a telephone directory known as "The Kosher Yellow Pages" to the members of the ultra-orthodox and Hassidic Jewish community.

22.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 22.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 23.

24.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 24.

25.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 25.

26.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 26.

27.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 27.

28.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 28.

29.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 29.

30.     Defendants deny the allegations of paragraph 30.

31.     Defendants deny the allegations of paragraph 31.

32.     Defendants deny the allegations of paragraph 32, except admit that DAG Media acquired the domain name www.kosheryellowpages.net, on or about February 12, 2004.

- 4 -

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations in paragraph 33.

34.     Defendants deny the allegations of paragraph 34.

35.     Defendants deny the allegations of paragraph 35, except admit that portions of DAG Media's December 2001 Annual Report are appear to be annexed as Exhibit S to the Ben-Hooren Declaration.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37.

38.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations of paragraph 38.

39.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations of paragraph 39.

40.     Defendants deny the allegations of paragraph 40.

41.     Defendants deny the allegations of paragraph 41.

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations of paragraph 42.

43.     Defendants deny the allegations of paragraph 43.

44.     Defendants deny the allegations of paragraph 44.

45.     Defendants deny the allegations of paragraph 45, except admit that, on or about September 30, 2002, DAG Media filed an application in the United States Patent and Trademark Office (the "USPTO"), Serial No. 76/455772 (the "Trademark Application") for registration of the mark THE KOSHER YELLOW PAGES (the "Contested Mark").

46.    Defendants deny the allegations of paragraph 46, except admit that Assaf Ran signed the Trademark Application on behalf of DAG Media and they refer to the original or a true copy of the Trademark Application for the substance thereof.

47.    Defendants deny the allegations of paragraph 47, except admit that Assaf Ran signed a declaration in connection with the Trademark Application on behalf of DAG Media, and they refer to the original or a true copy of the aforesaid declaration for the substance thereof.

48.    Defendants deny the allegations of paragraph 48, except admit that the Trademark Application was assigned serial number 76/455772 in the USPTO, an Examining Attorney of the USPTO Office Action initially refusing to register the Contested Mark, and that DAG Media thereafter amended its application to seek registration of the Contested Mark on the Supplemental Register, and they refer to the original or a true copy of the aforementioned documents, as filed in the USPTO, for the substance thereof.

49.    Defendants deny the allegations of paragraph 49, except admit that, on or about November 15, 2003, the USPTO issued a Notice of Allowance with respect to the Contested Mark, and they refer to the original or a true copy of the aforesaid Notice of Allowance for the substance thereof.

50.    Defendants deny the allegations of paragraph 50.

51.    Defendants deny the allegations of paragraph 51, except admit that DAG Media has actively promoted its "Kosher Yellow Pages" telephone directory, using the Contested Mark, since in or about February 1995.

## IN ANSWER TO THE FIRST CAUSE OF ACTION
**Defendants' Alleged False Designation of Origin, False
Desciptions of Fact and False Representations
In Direct Violation of the Lanham Act**

52.     Defendants repeat their responses to the preceding paragraphs of the Verified Complaint as if set forth fully herein.

53.     Defendants deny the allegations of paragraph 53.

54.     Defendants deny the allegations of paragraph 54.

55.     Defendants deny the allegations of paragraph 55.

56.     Defendants deny the allegations of paragraph 56.

57.     Defendants deny the allegations of paragraph 57.

## IN ANSWER TO THE SECOND CAUSE OF ACTION
**Alleged Unfair Business Competition in Violation of
New York's General Business Law § 349**

58.     Defendants repeat their responses to the preceding paragraphs of the Verified Complaint as if set forth fully herein.

59.     Defendants deny the allegations of paragraph 59.

60.     Defendants deny the allegations of paragraph 60.

61.     Defendants deny the allegations of paragraph 61.

62.     Defendants deny the allegations of paragraph 62, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning Sephardic's advertising and promotion.

63.     Defendants deny the allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

65.     Defendants deny the allegations of paragraph 65.

66.     Defendants deny the allegations of paragraph 66, except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

67.     Defendants deny the allegations of paragraph 67 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

68.     Defendants deny the allegations of paragraph 68 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

69.     Defendants deny the allegations of paragraph 69.

70.     Defendants deny the allegations of paragraph 70 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

71.     Defendants deny the allegations of paragraph 71 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

72.     Defendants deny the allegations of paragraph 72 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

73.     Defendants deny the allegations of paragraph 73, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning alleged affidavits.

74.     Defendants deny the allegations of paragraph 74

### IN ANSWER TO THE THIRD CAUSE OF ACTION
**Alleged Infringement of Plaintiff's Protected Tradename and Mark
In Violation of New York's General Business Law § 360-K**

75.     Defendants repeat their responses to the preceding paragraphs of the Verified Complaint as if set forth fully herein.

76.     Defendants deny the allegations of paragraph 76.

- 8 -

77.     Defendants deny the allegations of paragraph 77, except admit that Plaintiff continues its unauthorized use the Contest Mark.

78.     Defendants deny the allegations of paragraph 78, except admit that Plaintiff continues its unauthorized use the Contest Mark and they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning Plaintiff's corporate data.

79.     Defendants deny the allegations of paragraph 79.

80.     Defendants deny the allegations of paragraph 80, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning Sephardic's advertising and promotion.

81.     Defendants deny the allegations of paragraph 81.

82.     Defendants deny the allegations of paragraph 82.

83.     Defendants deny the allegations of paragraph 83.

84.     Defendants deny the allegations of paragraph 84.

85.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations of paragraph 85.

86.     Defendants deny the allegations of paragraph 86 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995 in connection with telephone directories.

87.     Defendants deny the allegations of paragraph 87.

88.     Defendants deny the allegations of paragraph 88, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning alleged affidavits.

89.     Defendants deny the allegations of paragraph 89.

90.    Defendants deny the allegations of paragraph 90.

91.    Defendants deny the allegations of paragraph 91.

92.    Defendants deny the allegations of paragraph 92.

93.    Defendants deny the allegations of paragraph 93.

94.    Defendants deny the allegations of paragraph 94.

## IN ANSWER TO THE FOURTH CAUSE OF ACTION
### Alleged Injury to Plaintiff's Business Reputation and Dilution
### In Violation of New York's General Business Law § 360-L

95.    Defendants repeat their responses to the preceding paragraphs of the Verified Complaint as if set forth fully herein.

96.    Defendants deny the allegations of paragraph 96, except admit that Plaintiff continues its unauthorized use the Contest Mark.

97.    Defendants deny the allegations of paragraph 97, except admit that Plaintiff continues its unauthorized use the Contest Mark.

98.    Defendants deny the allegations of paragraph 98, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning Sephardic's advertising and promotion.

99.    Defendants deny the allegations of paragraph 99.

100.    Defendants deny the allegations of paragraph 100.

101.    Defendants deny the allegations of paragraph 101, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning Plaintiff's corporate data.

102.    Defendants deny the allegations of paragraph 102.

- 10 -

103.    Defendants deny the allegations of paragraph 103 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

104.    Defendants deny the allegations of paragraph 104.

105.    Defendants deny the allegations of paragraph 105 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995.

106.    Defendants deny the allegations of paragraph 106.

107.    Defendants deny the allegations of paragraph 107.

108.    Defendants deny the allegations of paragraph 108.

**IN ANSWER TO THE FIFTH CAUSE OF ACTION**
**Alleged Use of Plaintiff's Name With Intent to Deceive**
**In Violation of New York's General Business Law § 133**

109.    Defendants repeat their responses to the preceding paragraphs of the Verified Complaint as if set forth fully herein.

110.    Defendants deny the allegations of paragraph 110, except admit that Plaintiff continues its unauthorized use the Contest Mark.

111.    Defendants deny the allegations of paragraph 111

112.    Defendants deny the allegations of paragraph 112, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning Sephardic's advertising and promotion.

113.    Defendants deny the allegations of paragraph 113 except admit that DAG Media and/or Dapey Assaf have used the Contested Mark in commerce from in or about February 1995 in connection with telephone directories.

114.    Defendants deny the allegations of paragraph 114.

115.    Defendants deny the allegations of paragraph 115.

116.     Defendants deny the allegations of paragraph 116.

117.     Defendants deny the allegations of paragraph 117.

118.     Defendants deny the allegations of paragraph 118, except they are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations concerning alleged affidavits.

119.     Defendants deny the allegations of paragraph 119.

120.     Defendants deny the allegations of paragraph 120.

121.     Defendants deny the allegations of paragraph 121.

122.     Defendants deny the allegations of paragraph 122.

### IN ANSWER TO THE SIXTH CAUSE OF ACTION
**Seeking Cancelation of Defendants' Alleged Unlawfully Registered "KOSHER YELLOW PAGES" Mark on the Supplemental Register Pursuant to 15 USC § 1119**

123.     Defendants repeat their responses to the preceding paragraphs of the Verified Complaint as if set forth fully herein.

124.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations of paragraph 124.

125.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsehood of the allegations of paragraph 125 except admit, upon information and belief, that Sephardic abandoned its application for registration of the Contested Mark.

126.     Defendants deny the allegations of paragraph 126.

127.     Defendants deny the allegations of paragraph 127, except admit that DAG Media filed the Trademark Application and they refer to the original or a true copy of the Trademark Application for the substance thereof.

128.    Defendants deny the allegations of paragraph 128, except admit that Assaf Ran signed the Trademark Application on behalf of DAG Media and they refer to the original or a true copy of the Trademark Application for the substance thereof.

129.    Defendants deny the allegations of paragraph 129, except admit that Assaf Ran a declaration in connection with the Trademark Application on behalf of DAG Media and they refer to the original or a true copy of the Trademark Application for the substance thereof.

130.    Defendants deny the allegations of paragraph 130, except admit that the Trademark Application was assigned serial number 76/455772 in the USPTO, that an Examining Attorney in the USPTO issued an office action refusing to register based on Lanham Act § 2(e)(1), and that DAG Media thereafter amended its application to seek registration of the Contested Mark on the Supplemental Register, and they refer to the original or a true copy of the aforementioned documents, as filed in the USPTO, for the substance thereof.

131.    Defendants deny the allegations of paragraph 131, except admit that, on or about November 15, 2003, the USPTO issued a Notice of Allowance with respect to the Contested Mark, and they refer to the original or a true copy of the aforesaid Notice of Allowance for the substance thereof.

132.    Defendants deny the allegations of paragraph 132, except admit that they filed specimens in connection with the Trademark Application and they refer to the original or a true copy of those specimens for the substance thereof.

133.    Defendants deny the allegations of paragraph 133 and they refer to the original or a true copy of specimens submitted with the Trademark Application for the substance thereof.

134.    Defendants deny the allegations of paragraph 134 and they refer to the original or a true copy of specimens submitted with the Trademark Application for the substance thereof.

135.    Defendants deny the allegations of paragraph 135.

136.    Defendants deny the allegations of paragraph 136 and they refer to the original or a true copy of specimens submitted with the Trademark Application for the substance thereof.

137.    Defendants deny the allegations of paragraph 137.

138.    Defendants deny the allegations of paragraph 138.

139.    Defendants deny the allegations of paragraph 139.

**IN ANSWER TO THE SIXTH CAUSE OF ACTION**
**Seeking an Accounting**

140.    Defendants repeat their responses to the preceding paragraphs of the Verified Complaint as if set forth fully herein.

a.    Defendants deny the allegations of paragraph 141.

141.    Defendants deny the allegations of paragraph 142.

142.    Defendants deny the allegations of paragraph 143.

143.    Defendants deny the allegations of paragraph 144.

144.    Defendants deny the allegations of paragraph 145.

145.    Defendants deny the allegations of paragraph 146.

146.    Defendants deny the allegations of paragraph 147.

**SEPARATE DEFENSES**

First Separate Defense

The Verified Complaint fails to state a claim upon which relief can be granted.

Second Separate Defense

This Court lacks subject matter over the matters at issue in the Verified Complaint, by virtue of a retention of jurisdiction by the United States District Court for the District of New

Jersey in a civil action entitled *DAG Media, Inc. v. The Jewish Sephardic Yellow Pages, Ltd. and David Ben-Hooren*, Civil Action No. CV-01-1953 (WGB) (the "New Jersey Action").

Third Separate Defense

This Court should decline to exercise subject matter jurisdiction of the within controversy pursuant to a retention of jurisdiction by the Court in the New Jersey Action.

Fourth Separate Defense

DAG Media is the record owner of United States Trademark Registration No. 2,818,517, of the mark THE KOSHER YELLOW PAGES for a business directory in International Class 16, which was approved for registration on November 15, 2003, and issued on February 24, 2004, listed on the Supplemental Register, and DAG Media is the first user to acquire distinctiveness in that mark; accordingly, Plaintiff is not entitled to any of the relief sought in the Verified Complaint.

Fifth Separate Defense

Plaintiff's claims in this matter are barred by the doctrine of unclean hands.

Sixth Separate Defense

Plaintiff's claims in this matter are barred by the doctrine of estoppel.

Seventh Separate Defense

Plaintiff's claims in this matter are barred by their breach of the Settlement Agreement in the New Jersey Action.

Eighth Separate Defense

Plaintiff's claims in this matter are barred, in whole or in part, by the Releases contained in the Settlement Agreement in the New Jersey Action.

- 15 -

<u>Ninth Separate Defense</u>

Any damages which may have been sustained by the Plaintiff are due to in whole or in part to culpable conduct of the Plaintiff.

<u>Tenth Separate Defense</u>

Plaintiff's claims in this matter are barred by the doctrine of waiver.

<u>Eleventh Separate Defense</u>

Plaintiff's claims are barred, in whole or in part, by laches.

<u>Twelfth Separate Defense</u>

To the extent that Plaintiff is entitled to any relief, Plaintiff has an adequate remedy at law.

## <u>COUNTERCLAIM AND THIRD-PARTY COMPLAINT</u>

Defendants, DAG Media, Inc. and Assaf Ran, for their Counterclaim against Plaintiff-Defendant on Counterclaim, The Jewish Sephardic Yellow Pages, Ltd. d/b/a Kosher Yellow Pages, and Third-Party Complaint against Third-Party Defendant, David Ben-Hooren, allege as follows:

### JURISDICTION AND VENUE

1.      This counterclaim arises, among other things, under the provisions of the Lanham Act, 15 U.S.C. § 1125, *et seq.* (the "Lanham Act").

2.      To the extent that this Court elects to retain jurisdiction of this controversy, the Court has jurisdiction of this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, as well as 15 U.S.C. § 1121.

3.      To the extent that this Court elects to retain jurisdiction of the Complaint in this controversy, venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a)**.**

## NATURE OF ACTION

4.      In this Counterclaim and Third-Party Complaint, DAG Media, Inc. ("DAG Media") and Assaf Ran seek a declaration of rights with respect to DAG Media's mark THE KOSHER YELLOW PAGES, as well as injunctive relief, monetary damages and other relief based on a continuing, unauthorized used of an identical or similar mark by The Jewish Sephardic Yellow Pages Ltd. ("Sephardic").

5.      In addition, DAG Media and Assaf Ran seek monetary damages and sanctions against Sephardic and third-party defendant David Ben-Hooren ("Ben-Hooren") for abuse of process arising from their actions in bringing an ex parte application for a temporary restraining order in this Court, without advising the Court of a retention of jurisdiction by another district court in prior litigation between the parties and in breach of a settlement agreement between the parties.

## THE PARTIES

6.      DAG  Media, is a corporation organized and existing under the laws of the State of New York, qualified to do business in the State of New Jersey, and has its principal place of business at 125-10 Queens Boulevard, Kew Gardens, New York.  DAG Media is the surviving corporation of a merger with its subsidiary, Dapey-Assaf-Hamadrikh Leassakim Israelim Be New York, Ltd. ("Dapey Assaf"), a New York corporation, which merger occurred on or about September 28, 1999.

7.      Assaf Ran is the Chief Executive Officer of DAG Media, a position he has held since the formation of DAG Media.  At all relevant times prior to the formation of DAG Media, Assaf Ran was the Chief Executive Officer of Dapey Assaf.

8.      At all relevant times, counterclaim defendant, Sephardic is and was a corporation organized and existing under the laws of the State of New York, having its principal place of business at 1405 Avenue Z, Brooklyn, New York.

9.      At all relevant times, Ben-Hooren is and was the Chief Executive Officer of Sephardic, and is a resident of the Borough of Brooklyn, Kings County, State of New York.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Business of DAG Media

10.      From in or about 1989, DAG Media and/or Dapey Assaf have been in the business of creating, selling and distributing bi-lingual (English and Hebrew) telephone directories in the United States.  DAG Media is a publicly traded company, listed on NASDAQ as DAGM.

11.      DAG Media's first bi-lingual directory, known as the Jewish Israeli Yellow Pages, was published and distributed in the United States in January 1990.  The Jewish Israeli Yellow Pages has been published twice a year since 1990, in February and August of each year.

12.      DAG Media's telephone directories are distributed in New York, New Jersey and Florida, to newsstands, Jewish Community Centers, kosher restaurants, and other businesses which cater to the Israeli-American and/or Jewish community.

13.      As an adjunct to its telephone directories, DAG Media offers and provides referral services in the form of a toll free number for end users of DAG Media directories, as well as an internet directory and a discount card program.

14.      In addition to the "The Jewish Israeli Yellow Pages," since 1998 DAG Media has published telephone directories known as "The Jewish Master Guide," and "The Kosher Yellow Pages."

15.     "The Jewish Israeli Yellow Pages" is a bi-lingual (English and Hebrew) directory that is distributed free through local commercial and retail establishments in the New York metropolitan area and through travel agencies in Israel.  All advertisements in "The Jewish Israeli Yellow Pages" are in English and Hebrew unless the advertiser specifically requests that the ad be in English only. "The Jewish Israeli Yellow Pages" is organized according to the Hebrew alphabet, although it is indexed in both Hebrew and English.  Upon information and belief, "The Jewish Israeli Yellow Pages" is used principally by persons whose native language is Hebrew, although it is used by members of the Hebrew community whether or not they speak Hebrew.

16.     "The Jewish Master Guide" and "The Kosher Yellow Pages" are yellow page directories that are designed to meet the special needs of the Hasidic and ultra-Orthodox Jewish communities in the New York metropolitan area.  These directories differ from "The Jewish Israeli Yellow Pages" in that they are published in English only and do not contain advertisements for products or services, such as escort services and the like, that might offend the Hasidic and ultra-Orthodox communities.

17.     DAG Media is the owner of numerous trademarks and service marks,  including the following federally registered marks:   THE JEWISH YELLOW PAGES (No. 2,060,166, Supplemental Register, issued May 6, 1997); THE JEWISH ISRAELI YELLOW PAGES (No. 2,051,709, Supplemental Register, issued April 8, 1997); THE ISRAELI YELLOW PAGES (No. 1,051,709, Principal Register, issued July 29, 1997); THE JEWISH REFERRAL SERVICE (2,126,406, Supplemental Register, issued December 30, 1997); and THE JEWISH MASTER GUIDE (No. 2,368,886, Principal Register, issued July 18, 2000 (service mark) and No. 2,371,274, Principal Register, issued July 25, 2000 (trademark)).

18.     DAG Media is also the record owner of United States Trademark Registration No. 2,818,517, of the mark THE KOSHER YELLOW PAGES for a business directory in International Class 16, issued on February 24, 2004, listed on the Supplemental Register.

<u>DAG MEDIA'S USE OF THE MARK "THE KOSHER YELLOW PAGES"</u>

19.     DAG Media, and Dapey Assaf before it, have used the mark THE KOSHER YELLOW PAGES in connection with yellow pages telephone directories, on a continuous basis, since February 1995.

20.     DAG Media's federal registration for the mark THE KOSHER YELLOW PAGES reflects the company's first use and first use of this mark in commerce on February 20, 1995.

21.     In connection with DAG Media's federal registration of the mark THE KOSHER YELLOW PAGES, Assaf Ran signed an application in which he swore, under penalty of perjury, that this mark was used by his company on February 20, 1995.

22.     In or about February 1995, Dapey Assaf began promoting "The Jewish Master Guide," and "The Kosher Yellow Pages" as niche directories that were designed to meet the special needs of the Hasidic and ultra-Orthodox Jewish communities in the New York metropolitan area.

23.     From their respective first editions, "The Jewish Master Guide" and "The Kosher Yellow Pages" have been produced as two directories that were identical except for their covers. That is, the pages contained within each respective edition of "The Jewish Master Guide" and "The Kosher Yellow Pages" are the same, but the covers are different.

24.     DAG Media's dual directory concept for "The Jewish Master Guide" and "The Kosher Yellow Pages" enhances distribution and provides added value for advertisers because in

many instances the target audience will have a copy of both directories, thereby increasing the opportunity for end users to see an advertisement.

25.     DAG Media used the mark THE KOSHER YELLOW PAGES promotional materials which, upon information and belief, date from 1995.

26.     The first edition of DAG Media's "The Kosher Yellow Pages" directory was published in December 1998, and is dated 1999.

27.     Since the first edition, there have been a total of nine (9) editions of "The Kosher Yellow Pages" and "The Jewish Master Guide."  The directories are published typically twice a year, in the months of June and December.

28.     Because it is targeted to the Hasidic and ultra-Orthodox Jewish communities, "The Kosher Yellow Pages" and "The Jewish Master Guide" directories DO NOT and HAVE NOT EVER advertised products or services that might offend the Hasidic and ultra-Orthodox communities, such as advertisements for "escort services."

29.     In the year 2001, DAG Media expended approximately $200,000 for advertising and promotion in connection with "The Kosher Yellow Pages" and "The Jewish Master Guide."

30.     In the year 2002, DAG Media expended approximately $220,000 for advertising and promotion in connection with "The Kosher Yellow Pages" and "The Jewish Master Guide."

31.     In the year 2003, DAG Media expended approximately $250,000 in connection with "The Kosher Yellow Pages" and "The Jewish Master Guide."

32.     The latest edition of DAG Media's "The Kosher Yellow Pages" directory, the 9th edition, has grown to more than 700 pages and the 28th edition of DAG Media's "The Jewish Israeli Yellow Pages" was recently published, with a total of 2048 pages.  In total, DAG Media has invested approximately $2 million in promoting the name and business reputation of the company.

33.     In or about September 2003, DAG Media entered into an agreement to sell one of its mainstream directories, the "Manhattan Yellow Pages."  After this sale, DAG Media's sales representatives have devoted greater energies and resources to growing the DAG Media's "The Kosher Yellow Pages" directory and related services.

34.     By virtue of DAG Media's continuous advertising and promotion of "The Kosher Yellow Pages" and "The Jewish Master Guide" directories and its maintenance of high quality standards for this directory, the name "The Kosher Yellow Pages" has become well and favorably known to advertisers and end users as an indication of origin in DAG Media.  As a consequence, DAG Media has established valuable goodwill and rights in the trade name and mark THE KOSHER YELLOW PAGES.

35.     DAG Media has established secondary meaning in its mark THE KOSHER YELLOW PAGES.

<u>BEN-HOOREN'S EMPLOYMENT WITH DAG MEDIA</u>

36.     On or about February 10, 1997, Ben-Hooren entered into a Contract of Employment with Dapey-Assaf.  Before his employment with Dapey Assaf, Ben-Hooren was employed in the children's clothing business.

37.     Ben-Hooren's Contract of Employment with Dapey Assaf contained certain restrictive covenants, in which Ben-Hooren agreed, among other things, as follows:

> [I]n the event of [Ben-Hooren's] termination, he will not become employed by, directly or indirectly, whether as an employee, or an independent contractor, nor associated with, nor own any part of, for a period of twelve (12) months, in any territory in which he functioned at any time during the twelve months immediately following his termination, any firm, person or corporation which (i) sells or services any directory, newspaper or magazine wholly or principally in the Hebrew language or (ii) which is competitive with

> [Dapey Assaf] and which distributes or markets products or services
> which are similar to the products or services of [Dapey Assaf] and
> which were sold by [Ben-Hooren] during the term of his employment
> with [Dapey Assaf].

38.     For a period of approximately four months, Ben-Hooren was employed as a sales representative for Dapey Assaf and during this time Ben-Hooren was exposed to Dapey Assaf's methods of doing business, package of services offered to customers, marketing literature, graphics, sales presentations and sales pitches.

39.     During his employment with Dapey Assaf, Ben-Hooren was also well aware of the company's efforts in connection with "The Jewish Master Guide" and "The Kosher Yellow Pages" directories, which the company was then actively promoting.

40.     Ben-Hooren voluntarily terminated his employment with Dapey Assaf after a period of four months.

<u>BEN-HOOREN'S UNLAWFUL IMITATION AND COPYING<br>OF DAG MEDIA AFTER TERMINATION</u>

41.     Virtually as soon as he left Dapey Assaf, Ben-Hooren began to violate the non-competition provisions of his employment agreement, among other things, by forming and running Sephardic, a business which is and has been competitive with Dapey Assaf and/or DAG Media and which distributes or markets products or services which are similar to the products or services of Dapey Assaf and which were sold by Ben-Hooren during the term of his employment with Dapey Assaf.

42.     In running his competitive business, Sephardic, Ben-Hooren has copied and/or imitated a variety of DAG Media's business models, including but not limited to copying and/or imitating DAG Media's package of services offered to customers, marketing literature, graphics, sales presentations and sales pitches.

43.     In particular, DAG Media is the only company to offer its advertisers a unique promotional package consisting of directory advertising, referral services, an online internet directory, and a discount club for end users.  Sephardic has attempted to imitate this business model.

44.     Sephardic and Ben-Hooren have copied DAG Media's business models for the purpose of misleading the consuming public to believe that the products and services offered by him and his company, Sephardic, are in fact associated with Dapey Assaf and/or DAG Media.

45.     Since resigning from Dapey Assaf, Ben-Hooren has imitated the business of Dapey Assaf and/or DAG Media by adopting confusingly similar slogans or marks.

46.     Soon after his termination from Dapey Assaf, Ben-Hooren began to publish and distribute a yellow pages type telephone directory known as "The Jewish Sephardic Yellow Pages." After receiving a cease and desist letter from attorneys for Dapey Assaf, he changed the name of that directory to "The Sephardic Yellow Pages."

47.     Beginning at least as early as February 2001, Sephardic began publishing, offering for sale and distributing a telephone directory known as the "Kosher Yellow Pages," which phrase is substantially the same or similar to DAG Media's mark THE KOSHER YELLOW PAGES, thus falsely indicating a sponsorship or connection with DAG Media's directories.

48.     Sephardic and Ben Hooren are not and have never been authorized by DAG Media and/or Dapey Assaf to publish, sell or distribute a telephone directory using a name that is substantially the same or similar to DAG Media's mark THE KOSHER YELLOW PAGES.

49.     Sephardic and Ben-Hooren had actual knowledge of DAG Media's rights in the mark THE KOSHER YELLOW PAGES by virtue of Ben-Hooren's previous employment with Dapey Assaf.  Accordingly, all wrongful acts of Sephardic and Ben-Hooren have been willful and in total disregard for the rights of DAG Media.

- 24 -

50.     In addition to its improper usage of DAG Media's mark THE KOSHER YELLOW PAGES, Separdic has also imitated DAG Media's two directory concept for, like DAG Media's "The Jewish Master Guide" and "The Kosher Yellow Pages" directories, Sephardic's "The Sephardic Yellow Pages" and "Kosher Yellow Pages" directories are also the same directory with two different covers.

51.     Sephardic's actions in (a) using a mark that is substantially identical or similar to DAG Media's mark THE KOSHER YELLOW PAGES, and (b) copying or imitation of DAG Media's two directory concept, are evidence that DAG Media has established secondary meaning in its mark THE KOSHER YELLOW PAGES.

PRIOR LITIGATION BETWEEN THE PARTIES IN THE DNJ ACTION

52.     On or about April 24, 2001, DAG Media, as plaintiff, filed a Verified Complaint against Sephardic and Ben-Hooren, as defendants, in the United States District Court for the District of New Jersey, in an action titled *DAG Media, Inc. v. The Jewish Sephardic Yellow Pages, Ltd. and David Ben-Hooren*, Civil Action No. CV-01-1953 (WGB) (the "DNJ Action").  True copies of the Complaint and Docket Sheet in the DNJ Action are annexed as Exhibit C.

53.     DAG Media's Complaint in the DNJ Action was filed soon after DAG Media had first become aware of Sephardic's publication of a telephone directory called "The Kosher Yellow Pages."

54.     The DNJ extensive litigation concerned a broad scope of trademark matters  and unfair competition -- including Sephardic's unauthorized use of a mark that was used by DAG Media in conjunction with its "The Kosher Yellow Pages" directory; namely, THE ONLY KOSHER YELLOW PAGES.

- 25 -

55.     In the DNJ Action, among other things, DAG Media sought a preliminary injunction and the Court in the DNJ Action ordered expedited discovery.

56.     On August 6, 2001, at a settlement conference before the Honorable Madeline Cox Arleo, U.S.M.J., the parties agreed to settle the DNJ Action.

57.     In connection with this settlement, Ben-Hooren agreed to change JSYP's sales presentation and promotional materials, by which he conceded that his actions had been improper.

58.     Thereafter, counsel for the parties attempted to negotiate the language of a written form of settlement agreement.

59.     On January 7, 2002, when discussions between attorneys had not yielded a final form of Settlement Agreement, DAG Media filed and the Court entered an Order to Show Cause, among other things, why the settlement agreement made between the parties in the Chambers of Magistrate Judge Arleo should not be put on the record.

60.     On January 29, 2002, the parties appeared before Judge Bassler, who thereafter signed an Order for Settlement, filed on February 1, 2004 and entered on the Court's docket as of February 4, 2002 (the "Order for Settlement").  In the DNJ Action, together with an Order to Show Cause seeking a temporary restraints and a preliminary injunction.  A true copy of the Order for Settlement is annexed hereto as Exhibit A.

61.     The Order for Settlement incorporates the terms of a Settlement Agreement that is annexed to the Order, including broad releases of all claims that were raised or could have been raised in the DNJ Action.

62.     Among other things, the Settlement Agreement also required Sephardic to

    a.   Discontinue any and all further use of the marks THE ONLY KOSHER YELLOW PAGES and THE JEWISH COMMUNITY REFERRAL

SERVICE, according to a negotiated schedule (see Ex. A, Settlement Agreement, ¶ 1);

b.  Notify all current advertisers that its "The Kosher Yellow Pages" directory was not affiliated with DAG Media's directories (see Ex. A, Settlement Agreement, ¶ 2);

c.  Revise its sales scripts, oral and written, providing for review by Magistrate Judge Arleo if the parties could not agree on whether the revised scripts were sufficient to distinguish JSYP from DAG Media (see Ex. A, Settlement Agreement, ¶ 3);

d.  Send a written apology to a witness whom Ben-Hooren had threatened (See Ex. A, Settlement Agreement, ¶ 4); and

e.  Return any and all documents that had been wrongfully retained by Ben-Hooren from his employment with DAG Media (See Ex. A, Settlement Agreement, ¶ 5.)

63.   One of the principal marks at issue in the DNJ Action, THE ONLY KOSHER DIRECTORY, was used by DAG Media in conjunction with its "Jewish Master Guide" and "Kosher Yellow Pages" directories.

64.   Sephardic and Ben-Hooren were aware of DAG Media's use of the mark THE KOSHER YELLOW PAGES prior to the releases executed by them in conjunction with the settlement of the DNJ Action.

65.   In the Settlement Agreement, the parties agreed to proceed as follows for an orderly resolution of future disputes:

- 27 -

In the event that either party believes the other party to be in breach of an obligation or undertaking set forth in this Agreement, the party asserting the breach shall advise the other party in writing, describing in detail the nature of the objection or alleged breach and requesting remedial action. Within twenty (20) days of said notice, . . . the party so notified shall respond substantively and in writing to the objection or alleged breach raised by the notifying party. If the parties are unable to resolve the issue so raised within thirty (30) days of the original notice, the party claiming breach shall have the right to commence an action in a court of competent jurisdiction, for inter alia, breach of contract and any other rights stemming from the aforesaid breach or violation, including but not limited to, trademark and service mark infringement and unfair competition. Neither party shall assert a claim of delay in any lawsuit based on a party's compliance with this provision.

(Settlement Agreement, ¶ 9.)

66.    In the Settlement Agreement, DAG Media gave up its claims for monetary damages against Sephardic and Ben-Hooren in exchange, among other things, for the knowledge and solace that future disputes concerning matters that were raised or could have been raised in the New Jersey action would be resolved in an orderly manner, in accordance with the provisions of paragraph 9 of the Settlement Agreement.

67.    In the Order for Settlement, the court in the New Jersey Action "retain[ed] jurisdiction to enforce the settlement."

68.    In addition, the Order for Settlement provides that, "in the event either [Sephardic or Ben-Hooren] violates any provision of this Order or the settlement agreement incorporated herein, [DAG Media's] counsel may apply to this court, on notice to Defendant's counsel, for appropriate sanctions."

- 28 -

69.     DAG Media and Assaf Ran considered Judge Bassler's retention of jurisdiction as a vital part of the settlement in the New Jersey Action, providing an efficient means of raising and disposing of disputes that may arise under the Settlement Agreement.

70.     On or about October 12, 2002, DAG Media filed an application before Judge Bassler in the DNJ Application, seeking sanctions against JSYP and Ben-Hooren for contempt.

71.     Thereafter, on or about October 29, 2002, JYSP and Ben-Hooren filed a cross-application against DAG Media for contempt, claiming among other things that JSYP has an undisputed right to use the mark THE KOSHER YELLOW PAGES.

72.     On or about November 12, 2002, the parties appeared before Judge Bassler in the DNJ Action on the parties' respective contempt applications.  After a discussion in Judge Bassler's chambers, the parties all withdrew their respective cross-applications for breach of the Settlement Agreement.

73.     Notwithstanding DAG Media's withdrawal of its contempt application, during the past six years, Sephardic and Ben-Hooren have caused hundreds of instances of customer confusion. In some instances, the confusion of advertisers was material, meaning that there were advertisers who paid money to JSYP or Ben-Hooren in the mistaken belief that they were entering into an agreement with DAG Media businesses.

<u>UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT</u>
<u>BY SEPHARDIC AND BEN-HOOREN</u>

74.     Both DAG Media and Sephardic are in the business of publishing, marketing and distributing telephone directories for the Hasidic and ultra-Orthodox Jewish communities in the New York metropolitan area.

- 29 -

75.     Notwithstanding DAG Media's long use of the mark THE KOSHER YELLOW PAGES in connection with telephone directories designed to meet the special needs of the Hasidic and ultra-Orthodox Jewish communities, Sephardic and Ben-Hooren, from and after at least February 2001, have published, marketed and distributed a telephone directory known as the "Kosher Yellow Pages," which phrase is substantially the same or similar to DAG Media's mark THE KOSHER YELLOW PAGES, thus falsely indicating a sponsorship or connection with DAG Media's directories.

76.     Sephardic and Ben-Hooren have adopted the identical and/or confusingly similar mark "Kosher Yellow Pages" without consent or authorization of DAG Media.

77.     Sephardic and Ben-Hooren's copying and/or imitation of DAG Media's trademark is calculated to deceive prospective advertisers and the consuming public and has misled, and continues to mislead them to believe that Sephardic's telephone directories are similar to the telephone directories of DAG Media.

78.     The imitation by Separdic and Ben-Hooren of DAG Media's trademark is calculated to deceive prospective advertisers and the consuming public and has misled, and continues to mislead them to believe that Sephardic's telephone directories originate from DAG Media.

79.     The actions of Sephardic and Ben-Hooren, as aforesaid, are likely to cause confusion or to cause mistake or to deceive purchasers of advertising as well as readers of such directories as to the sponsorship or approval thereof by DAG Media and as to the source and origin of the telephone directories and services in question, in violation of section 32 of the Lanham Act,

80.     As a result of the foregoing, DAG Media and Assaf Ran have and continue to be damaged and irreparably injured by Sephardic and Ben-Hooren.

- 30 -

81.     It is difficult for DAG Media to estimate the amount of business it has lost as a result of the actions of Sephardic and Ben-Hooren.

82.     DAG Media and Assaf Ran have no adequate remedy at law.

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT

83.     DAG Media and Assaf Ran repeat and reallege each and every one of their allegations contained in paragraphs 1 through 82 above, as if set forth fully herein.

84.     Since in or about February 1995, DAG Media and/or its predecessor company Dapey Assaf have used the mark THE KOSHER YELLOW PAGES in interstate commerce.

85.     Since December 1998, DAG Media and/or its predecessor company Dapey Assaf have distributed telephone directories bearing the mark THE KOSHER YELLOW PAGES.

86.     DAG Media and/or Dapey Assaf was and is the first person to use the mark THE KOSHER YELLOW PAGES or any trademark similar to it, in association with telephone directories and related services.

87.     As a result of continued use in interstate commerce by DAG Media and/or Dapey Assaf, from and after February 1995, and the publication and distribution by DAG Media of telephone directories bearing the mark THE KOSHER YELLOW PAGES from and after 1998, the mark has become widely known and DAG Media has become identified in the public mind as the source of "The Kosher Yellow Pages" directory.

88.     By virtue of DAG Media's continuous advertising and promotion of "The Kosher Yellow Pages" and "The Jewish Master Guide" directories and its maintenance of high quality standards for this directory, the name "The Kosher Yellow Pages" has become well and favorably known to advertisers and end users as an indication of origin in DAG Media.  As a consequence,

DAG Media has established valuable goodwill and rights in the trade name and mark THE KOSHER YELLOW PAGES.

89.    DAG Media has established secondary meaning and acquired distinctiveness in its mark THE KOSHER YELLOW PAGES.

90.    DAG Media was and is the first user of the mark THE KOSHER YELLOW PAGES to establish secondary meaning and acquired distinctiveness in its mark THE KOSHER YELLOW PAGES.

91.    As a result of Plaintiff's Complaint in this matter, an actual controversy exists with regard to ownership of the mark THE KOSHER YELLOW PAGES and who first acquired distinctiveness in connection with that mark.

92.    Having attained acquired distinctiveness as a result of its continuous use and promotion, DAG Media is entitled to registration of the mark THE KOSHER YELLOW PAGES on the Principal Register of the United States Patent and Trademark Office.

93.    DAG Media seeks a declaration, pursuant to 28 U.S.C. §§ 2201 & 2202, of its rights with respect to the mark THE KOSHER YELLOW PAGES and, in particular, that it is the rightful owner of that mark and has exclusive rights to use of that mark.

**SECOND CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT – LANHAM ACT**

94.    DAG Media and Assaf Ran reallege each and every one of its allegations contained in paragraphs 1 through 93 above, as if set forth fully herein.

95.    The actions of Sephardic and Ben-Hooren, as aforesaid, are likely to cause confusion or to cause mistake or to deceive purchasers of advertising as well as readers of such directories as to

the sponsorship or approval thereof by DAG Media and as to the source and origin of the telephone directories and services in question, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

96.     As a result of the foregoing, DAG Media and Assaf Ran have and continue to be damaged and irreparably injured by Sephardic and Ben-Hooren.

### THIRD CAUSE OF ACTION
### FALSE REPRESENTATIONS AND FALSE
### DESIGNATION OF ORIGIN – LANHAM ACT

97.     DAG Media and Assaf Ran reallege each and every one of its allegations contained in paragraphs 1 through 96 above, as if set forth fully herein.

98.     The actions of Sephardic and Ben-Hooren, as aforesaid, constitute false designations of origin, false and misleading descriptions, and false and misleading representations, which are likely to cause confusion, mistake or deception and misrepresent the nature, characteristics and qualities of the goods and services of Sephardic and Ben-Hooren, in violation of Section 2(a)(1) of the Lanham Act, 15 U.S.C. § 1125.

99.     As a result of the foregoing, DAG Media and Assaf Ran have and continue to be damaged and irreparably injured by Sephardic and Ben-Hooren.

### FOURTH CAUSE OF ACTION
### UNFAIR BUSINESS COMPETITION
### NEW YORK GENERAL BUSINESS LAW § 349

100.     DAG Media and Assaf Ran reallege each and every one of its allegations contained in paragraphs 1 through 99 above, as if set forth fully herein.

101.     The actions of Sephardic and Ben-Hooren, as aforesaid, constitute unfair business competition in violation of New York's General Business Law § 349.

- 33 -

102.     As a result of the foregoing, DAG Media and Assaf Ran have and continue to be damaged and irreparably injured by Sephardic and Ben-Hooren.

**FIFTH CAUSE OF ACTION**
**INFRINGEMENT OF PROTECTED MARK**
**NEW YORK GENERAL BUSINESS LAW § 360-K**

103.     DAG Media and Assaf Ran reallege each and every one of its allegations contained in paragraphs 1 through 103 above, as if set forth fully herein.

104.     The actions of Sephardic and Ben-Hooren, as aforesaid, constitute infringement of DAG Media's protected mark, THE KOSHER YELLOW PAGES, in violation of New York's General Business Law § 360-K.

105.     As a result of the foregoing, DAG Media and Assaf Ran have and continue to be damaged and irreparably injured by Sephardic and Ben-Hooren.

**SIXTH CAUSE OF ACTION**
**INJURY TO BUSINESS REPUTATION**
**NEW YORK GENERAL BUSINESS LAW § 360-L**

106.     DAG Media and Assaf Ran reallege each and every one of its allegations contained in paragraphs 1 through 105 above, as if set forth fully herein.

107.     The actions of Sephardic and Ben-Hooren, as aforesaid, are likely to cause injury to the business reputation of DAG Media and Assaf Ran, in violation of New York's General Business Law § 360-L.

108.     As a result of the foregoing, DAG Media and Assaf Ran have and continue to be damaged and irreparably injured by Sephardic and Ben-Hooren.

- 34 -

## SEVENTH CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT

109.    DAG Media and Assaf Ran reallege each and every one of its allegations contained in

paragraphs 1 through 108 above, as if set forth fully herein.

110.    The actions of Sephardic and Ben-Hooren, as aforesaid, constitute infringement of

DAG Media's mark, THE KOSHER YELLOW PAGES, in violation of the common law of the State

of New York.

111.    As a result of the foregoing, DAG Media and Assaf Ran have and continue to be

damaged and irreparably injured by Sephardic and Ben-Hooren.

## EIGHTH CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT

112.    DAG Media and Assaf Ran reallege each and every one of its allegations contained in

paragraphs 1 through 111 above, as if set forth fully herein.

113.    The actions of Sephardic and Ben-Hooren, as aforesaid, constitute unfair competition

and passing off, in violation of the common law of the State of New York.

114.    As a result of the foregoing, DAG Media and Assaf Ran have and continue to be

damaged and irreparably injured by Sephardic and Ben-Hooren.

## NINTH CAUSE OF ACTION
## ABUSE OF PROCESS

115.    DAG Media and Assaf Ran reallege each and every one of its allegations contained in

paragraphs 1 through 116 above, as if set forth fully herein.

116.    On or about February 25, 2004, Sephardic commenced this Action by filing its

Complaint in the United States District Court for the Eastern District of New York.

- 35 -

117.    The claims asserted by Sephardic in this action, relating to Sephardic's alleged ownership of the mark KOSHER YELLOW PAGES, are substantially similar to and an extension of Sephardic's cross-claim for contempt in the New Jersey Action.

118.    In bringing its cross-claim for contempt in the New Jersey Action, Sephardic considered DAG Media's usage of the mark THE KOSHER YELLOW PAGES to be an action in breach of the Settlement Agreement in the New Jersey Action.

119.    Sephardic voluntarily withdrew its cross-claims against DAG Media in the New Jersey Action for contempt and breach of the Settlement Agreement arising from DAG Media's alleged improper usage of the mark THE KOSHER YELLOW PAGES.

120.    Prior to commencing this action, Sephardic did not provide notice to DAG Media that Sephardic considered DAG Media to be in breach of the Settlement Agreement.

121.    Sephardic's actions in commencing this action and seeking an ex parte temporary restraining order and a preliminary injunction without prior notice, as aforesaid, constitute a breach of the Settlement Agreement in the New Jersey Action.

122.    Sephardic's actions in commencing this action and seeking an ex parte temporary restraining order and a preliminary injunction without prior notice, as aforesaid, constitute an improper use of judicial process which was not warranted or authorized.

123.    Sephardic's actions in commencing this action without prior notice and seeking an ex parte temporary restraining order and a preliminary injunction, as aforesaid, were a deliberate attempt to circumvent Judge Bassler's retention of jurisdiction in the New Jersey Action.

124.    Sephardic's actions in commencing this action without prior notice and seeking an ex parte temporary restraining order and a preliminary injunction, as aforesaid, were taken for an improper purpose.

125.     In commencing this action, Sephardic failed to disclose the New Jersey Action and Judge Bassler's retention of jurisdiction.

126.     Sephardic's acts in commencing this action without disclosing the New Jersey Action and/or Judge Bassler's retention of jurisdiction constitute an abuse of process, in violation of the laws of the State of New York.

127.     Sephardic and Ben-Hooren have been aware of DAG Media's usage of the mark THE KOSHER YELLOW PAGES for several years, and since at least as early as October 2002.

128.     Sephardic's actions in commencing this action and seeking ex parte injunctive relief, without disclosing to the Court that it had known of DAG Media's usage of the mark THE KOSHER YELLOW PAGES for several years, and since at least as early as October 2002, constitute an abuse of process, in violation of the laws of the State of New York.

129.     The aforesaid actions of Sephardic and Ben-Hooren have caused damage to DAG Media and Ben-Hooren.

## TENTH CAUSE OF ACTION
## BREACH OF SETTLEMENT AGREEMENT

130.     DAG Media and Assaf Ran reallege each and every one of its allegations contained in paragraphs 1 through 129 above, as if set forth fully herein.

131.     Prior to commencing this action, Sephardic did not provide notice to DAG Media that Sephardic considered DAG Media to be in breach of the Settlement Agreement.

132.     Sephardic's actions in commencing this action and seeking ex parte injunctive relief, without disclosing to the Court that it had known of DAG Media's usage of the mark THE KOSHER YELLOW PAGES for several years, and since at least as early as October 2002, were in breach of the Settlement Agreement.

133.    Sephardic's actions in commencing this action and seeking an ex parte temporary restraining order and a preliminary injunction without prior notice, as aforesaid, constitute a breach of the Settlement Agreement in the New Jersey Action.

134.    The aforesaid actions of Sephardic and Ben-Hooren have caused damage to DAG Media and Ben-Hooren.

WHEREFORE, DAG Media requests that the Court enter judgment in its favor, as follows:

a)    Declaring that DAG Media:

    i)    Is the rightful owner of the mark THE KOSHER YELLOW PAGES;

    ii)    Has exclusive rights to the use of the mark THE KOSHER YELLOW PAGES in interstate commerce; and

    iii)    Is entitled to registration of its mark, THE KOSHER YELLOW PAGES, on the Principal Register of the United States Patent and Trademark Office;

b)    Requiring that Sephardic and Ben-Hooren, their respective officers, agents, co-conspirators, servants, affiliates, employees, parent and subsidiary corporations, attorneys and representatives, and all those in privity or acting in concert with Sephardic and Ben-Hooren, and each and all of them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

    i)    Using service marks, trademarks, or trade names in connection with the advertisement, promotion, offering or rendering of advertising services in their Directories that imitate or simulate Plaintiff's service marks, trademarks, or trade names;

    ii)    Performing any actions or using any service marks, trademarks, trade name, words, names, styles, titles, designs or marks that are likely to cause

confusion or mistake, or to deceive; or to otherwise mislead the trade or public into believing that DAG Media and Sephardic are one and the same or in some way connected; or that DAG Media is a sponsor of Sephardic and Ben-Hooren; or that Sephardic and Ben-Hooren are in some manner affiliated or associated with or under the supervision or control of DAG Media or Assaf Ran; or that the goods or services of Defendants originate with DAG Media; or are likely in any way to lead the trade or the public to associate with Sephardic with DAG Media.

iii)     Using any service marks, trademarks, or trade names or engaging in any other conduct that creates a likelihood of injury to the business reputation of Plaintiff or a likelihood of misappropriation and dilution of DAG Media's distinctive trademarks, and trade name and the good will associated therewith;

iv)     Registering as a service mark or trademark any name or mark containing the words "Kosher Yellow Pages" or the words "The Kosher Yellow Pages" alone or in combination with other words, names, styles, titles or marks;

v)     Using any trade practices whatsoever, including those complained of in this Complaint, that tend to unfairly compete with or injure Plaintiff, its business and the good will appertaining thereto.

c)     Directing the Commissioner of Patents and Trademarks to register DAG Media's mark THE KOSHER YELLOW PAGES as a trademark on the Principal Register of the United States Patent and Trademark Office;

- 39 -

d)      Requiring Sephardic and Ben-Hooren to pay compensatory damages for the injuries sustained by DAG Media and Assaf Ran as a consequence of the acts here complained of in an amount to be determined at trial, and that such damages be trebled because of the willful acts described here in disregard of known rights of DAG Media and Sephardic;

e)      Requiring Sephardic and Ben-Hooren to account to DAG Media and Assaf Ran for any and all gains, profits and advantages derived by them from the activities complained of in this Counterclaim and Third-Party Complaint;

f)      Requiring Sephardic and Ben-Hooren to deliver for destruction all advertisements, brochures, promotional materials, packaging and other material bearing the infringing mark "Kosher Yellow Pages" or "The Kosher Yellow Pages," together with any plates, molds, matrices or other means or materials for making and reproducing the same;

g)      Awarding its costs, expenses and attorneys fees and such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

_____
Charles E. Baxley  (CB 8486)
Joseph T. Murray (JM 3564)
James F. Baxley (JB 3342)
  (pro hac vice admission pending)
Hart, Baxley, Daniels & Holton
*Attorneys for Defendants*
90 John Street, Suite 309
New York, New York 10038
Telephone 212-791-7200
Facsimile 212-791-7276

Dated:  April 7, 2004

- 40 -