UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THE JEWISH SEPHARDIC
YELLOW PAGES, LTD.,

                Plaintiff,

       -against-

DAG MEDIA, INC. and ASSAF RAN,

                Defendants.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**

04 CV 747 (RJD) (RLM)

DEARIE, Chief Judge.

       Plaintiff The Jewish Sephardic Yellow Pages, Ltd. ("JSYP") sues defendants DAG Media, Inc. ("DAG") and its president and CEO Assaf Ran under the Lanham Act and New York state law for infringement of the unregistered trademark "Kosher Yellow Pages." Defendants now seek summary judgment on plaintiff's federal infringement claim, alleging that the mark is ineligible for trademark protection. The Court referred the motion to Magistrate Judge Roanne L. Mann for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On August 31, 2006, Magistrate Judge Mann concluded that the mark is ineligible for protection and recommended that defendants' motion be granted. On September 25, 2006, plaintiff filed objections to the Report. The Court has reviewed the record de novo and considered plaintiff's objections and defendants' responses. Plaintiff's objections are meritless.

       In her Report, Magistrate Judge Mann concluded that the term Kosher Yellow Pages was descriptive rather than generic or suggestive. Magistrate Judge Mann went on to find that the mark is ineligible for trademark protection because plaintiff had not proved secondary meaning. Although the mark may be more appropriately classified as generic, the Court without hesitation

joins Magistrate Judge Mann's well-supported conclusion that the mark, if deemed descriptive in character, has not acquired secondary meaning. Accordingly, the Court adopts Magistrate Judge Mann's recommendation that defendants' summary judgment motion should be granted.

## DISCUSSION

The material facts and procedural history are laid out in full in Magistrate Judge Mann's comprehensive Report.

### A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000) (quoting Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)). The Court's role in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Although trademark disputes involve inherently factual determinations, the Second Circuit has indicated that summary judgment is as appropriate in trademark cases as in other cases where there are no triable issues of fact. See, e.g., Bernard v. TBG Mktg. Co., 964 F.2d 1338, 1343 (2d Cir. 1992) (affirming district court's grant of summary judgment in trademark case).

### B. Trademark Protection

Marks are classified in categories of increasing distinctiveness: (1) generic, (2)

descriptive, (3) suggestive, and (4) arbitrary or fanciful. See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1039 (2d Cir. 1992). The latter two categories are deemed "inherently distinctive" and are accorded protection on this basis alone. Id. Generic marks are never protected, whereas descriptive marks are eligible for protection only when they have acquired distinctiveness or "secondary meaning." Id.

The Court agrees with Magistrate Judge Mann's determination that the mark is not suggestive because it does not "require[] imagination, thought and perception to reach a conclusion as to the nature of goods." Bernard, 964 F.2d at 1341. Whether the mark is descriptive rather than generic is a much closer question. Generic terms "refer to the genus or class of which the product is a species," while descriptive terms "convey an immediate idea of some characteristic or attribute of the product." Papercutter, Inc. v. Fay's Drug Co., Inc., 900 F.2d 558, 561-62 (2d Cir. 1990). The Second Circuit has noted that the line between these two categories is "chimerical" and "often illusory." See Thompson Medical Co., Inc. v. Pfizer, Inc., 753 F.2d 208, 213 n.8, 215 (2d Cir. 1985); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:20, at 12-78 (4th ed. 2006) (characterizing the boundary as "fuzzy and undefinable"). This line has proven especially elusive in the present case. As Judge Mann pointed out in her Report, plaintiff itself has used the Kosher Yellow Pages phrase in a generic sense. See Report and Recommendation at 32-35. At the same time, however, the composite term connotes more than one type of merchandise, and thus does not clearly "refer to the general class or category of the product" as is true of generic terms. Papercutter, Inc., 900 F.2d at 562. At this juncture, the Court need not definitively classify Kosher Yellow Pages as a descriptive rather than a generic mark since plaintiff's failure to

3

establish secondary meaning renders the mark ineligible for protection regardless. See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1150-52 & n.5 (9th Cir. 1999) (declining to classify mark as generic or descriptive where plaintiff failed to show secondary meaning); Brandwynne v. Combe Int'l, Ltd., 74 F. Supp. 2d 364, 382 (S.D.N.Y. 1999) (classifying mark as generic in a close case but discussing plaintiff's failure to show secondary meaning as alternative ground for holding that the mark was not protected).

In determining whether a descriptive term has acquired secondary meaning, the Court looks to whether the term "comes through use to be uniquely associated with a single source." Papercutter, Inc., 900 F.2d at 564. The critical question is whether "the primary significance of the term in the minds of the consuming public is not the product but the producer." Bristol-Myers Squibb Co., 973 F.2d at 1041 (quoting Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, 830 F.2d 1217, 1221 (2d Cir. 1987)). Secondary meaning is an inherently fact-bound determination entailing "vigorous evidentiary requirements," and the burden of proof rests on the party asserting exclusive rights in the mark—here, plaintiff JSYP. Id. at 1041 (quotations omitted). Moreover, the party asserting these rights must demonstrate that the mark acquired secondary meaning "before its competitor commenced use of the mark." Papercutter, Inc., 900 F.2d at 564.

Among the factors that courts have found relevant to the question of secondary meaning are: (1) advertising expenditures; (2) consumer studies; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use. See Bristol-Myers Squibb Co., 973 F.2d at 1041. "In assessing the existence of secondary meaning, no single factor is determinative, and every element need not be proved." Thompson Medical Co., 753 F.2d at 217 (quotation omitted). Although the Second Circuit has stated that

4

district courts should be cautious in weighing these factors at the summary judgment stage, it has nonetheless supported summary judgment in cases where the proponent of the alleged trademark has failed to raise a material issue of fact on the question of secondary meaning. See, e.g., Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc., 65 F.3d 1063, 1071 (2d Cir. 1995) (affirming district court's grant of summary judgment in trade dress case where plaintiff "failed to raise a material issue of fact as to whether [its product] had acquired secondary meaning in the marketplace"); Bernard, 964 F.2d at 1343 (affirming district court's grant of summary judgment in trademark case where plaintiff "produced no evidence that a significant number of prospective purchasers associate his [] trademark with his product").

Based upon the submissions before the Court and considering the six factors outlined above, no reasonable jury could find that consumers had come to identify the term Kosher Yellow Pages with plaintiff by the time DAG began marketing its competing product in 2003.[1]

First, plaintiff claims that it has spent "in excess of tens of thousands of dollars annually" to advertise its mark. Ben-Hooren Decl. ¶ 54.[2] However, even after ample discovery, plaintiff has failed to show with any level of specificity the portion of this outlay that was devoted to its Kosher Yellow Pages mark. While plaintiff contends that it spent between $90,000 and $165,000 each year from 1999 to 2003 on telemarketing calls and over $320,000 in 1999 and 2000 on advertisements in newspapers, Ben-Hooren Supplemental Decl. ¶¶ 50-52, plaintiff has

---

[1] Though the parties dispute the date when DAG first began using the Kosher Yellow Pages mark, they have agreed, for purposes of this motion, that DAG has been publishing its Kosher Yellow Pages directory since at least 2003. Pl.'s Rule 56.1 Statement ¶ 21; Defs.' Mem. Law Supp. Mot. Summ. J. at 4.

[2] Plaintiff's submissions variously spell Ben-Hooren's name with and without a hyphen.

5

elsewhere admitted to presenting its Kosher Yellow Pages and Sephardic Yellow Pages directories to advertisers simultaneously. Ben-Hooren Decl. ¶ 16; Ben-Hooren Supplemental Decl. Ex. 17. Further, many of the marketing efforts undertaken by plaintiff—for example, the newspaper ads, billboards, door stickers, and promotional postcards—did not exclusively showcase the Kosher Yellow Pages mark. See Ben-Hooren Supplemental Decl. Exs. 16, 18, 22, 25. Rather, these materials display the Kosher Yellow Pages mark alongside and sometimes less prominently than JSYP's other identifying marks.[3] Several of plaintiff's purported promotional materials do not contain the Kosher Yellow Pages mark at all. See Ben-Hooren Supplemental Decl. Exs. 20, 23. Finally, plaintiff has not submitted any concrete evidence showing that these efforts succeeded in reaching the Jewish phonebook users who are plaintiff's target audience and who, along with advertisers, comprise the relevant segment of the public for purposes of assessing secondary meaning.[4] See Report and Recommendation at 42-44 (discussing relevant segment of the public). Thus, the Court is unable to conclude that plaintiff's advertising efforts have been effective in causing either advertisers or the consuming public to associate Kosher Yellow Pages only with plaintiff.

Second, plaintiff, by its own admission, has not conducted a consumer survey. Revised

---

[3] These other marks include: "The Only Kosher Yellow Pages in the World!!" slogan; plaintiff's www.kosheryellow.com web address; plaintiff's Sephardic Yellow Pages directory; and the walking fingers logo typically associated with phone books.

[4] In this regard, the Court takes special note of the fact that plaintiff did not provide annual distribution figures reflecting the number of consumers who received its Kosher Yellow Pages directory. Nor do plaintiff's statistics charting the growing number of website hits during the relevant time period confirm that a "tremendous portion of the population" was exposed to the mark because the hits could have come from a small number of frequent visitors. Ben-Hooren Supplemental Decl. ¶ 49.

Pl.'s Supplemental Mem. Law at 4. Instead, plaintiff has submitted 14 identical affidavits from advertisers, all of whom claim they "automatically associate" the phrase Kosher Yellow Pages with plaintiff's directory. Ben-Hooren Decl. ¶ 34 & Ex. 12. While courts have stated that "consumer surveys are the 'most direct and persuasive evidence of secondary meaning,'" Black & Decker Corp. v. Dunsford, 944 F. Supp. 220, 227 n.9 (S.D.N.Y. 1996) (quoting Co-Rect Prods., Inc. v. Marvy! Advertising Photography, Inc., 780 F.2d 1324, 1333 n.9 (8th Cir. 1985)), the conclusory assertions in these boilerplate affidavits offer only scant support for the proposition that plaintiff's mark had acquired the requisite level of recognition among the relevant audience.

Third, though plaintiff claimed early on in the litigation that it has "achieved and sustained significant and substantial sales," it does not provide any actual sales figures. Ben Hooren TRO Decl. ¶ 81. Plaintiff's blanket assertion that Kosher Yellow Pages is "the print medium of choice" for high-end corporate advertisers and the six representative advertisements it submitted are no substitute for hard numbers. Ben Hooren TRO Decl. ¶¶ 25, 26 & Exs. M, N.

Fourth, plaintiff's only evidence of unsolicited media coverage is one 1999 article on David Ben-Hooren which centers its discussion on the Sephardic Yellow Pages directory and nowhere mentions the Kosher Yellow Pages directory by name. Ben-Hooren TRO Decl. Ex. O.

Fifth, plaintiff contends that defendants intentionally copied the Kosher Yellow Pages mark to take advantage of plaintiff's pre-existing name recognition. Revised Pl.'s Supplemental Mem. at 6. Plaintiff has marshaled evidence suggesting that defendants appropriated the Kosher Yellow Pages mark and doctored records to indicate that they were the first users of the mark. See Ben-Hooren Decl. ¶¶ 38, 39, 43, 45. But "although imitative intent can help support a

7

finding of secondary meaning, it does not necessarily mandate one[.]" Bristol-Myers Squibb Co., 973 F.2d at 1042 (internal citations omitted). Cf. ITC Ltd. v. Punchgini, Inc., 373 F. Supp. 2d 275, 291 (S.D.N.Y. 2005) ("Although there may be some circumstances in which intentional copying is sufficient to show 'secondary meaning,' it would be tautological to conclude that copying alone demonstrates 'secondary meaning' . . . where that copying is only prohibited . . . if that mark has 'secondary meaning.'").

Finally, regarding length and exclusivity of use, there is no magic time span that confers secondary meaning. See Centaur Commc'ns, Ltd., 830 F.2d at 1225 ("Of course, no absolute time span can be posited as a yardstick in cases involving secondary meaning. Instead, the length and exclusivity of a mark's use is evaluated in light of the product and its consumers.") (citations omitted). For purposes of this motion, it is undisputed that plaintiff used the Kosher Yellow Pages mark exclusively from 2000 until 2003. While this is not an insignificant amount of time, particularly within the context of a niche market, the Court cannot conclude that a discrete four-year period during which plaintiff published no more than four editions of its directory was sufficient to cause the relevant audience to identify the Kosher Yellow Pages mark with plaintiff.

Having given careful consideration to the above factors, the Court concludes that plaintiff has failed to meet the "vigorous evidentiary requirements" necessary to show secondary meaning. Even crediting the evidence of intentional copying, the Court holds that no reasonable jury could find that "the primary significance of the term in the minds of the consuming public is not the product but the producer." Bristol-Myers Squibb Co., 973 F.2d at 1041. Thus, even if Kosher Yellow Pages were classified as a descriptive rather than a generic mark, it would not be entitled to protection.

## CONCLUSION

The Court agrees with Magistrate Judge Mann's recommendation that defendants' motion for summary judgment be granted. Plaintiff's federal infringement claim is therefore dismissed.

SO ORDERED.
Dated: Brooklyn, New York
      March 19, 2007

                                      s/ Judge Raymond J. Dearie
                                      RAYMOND J. DEARIE
                                      United States District Judge